Mr. Chief Justice TANEY
 

 delivered ffie opinion of ffie court.
 

 The record- in this case is very voluminous,, and contains a'great mass of testimony, and' also many incidental questions of law not involving ffie merits of ffie case, which.were raised- and', decided in ffie Circuit Court, and to which exceptions were taken by the plaintiff in error. But. both parties have expressedj their desire-tnat ffie controversy should now be terminated by the judgment of this court; and that ffie leading principles which must ultimately ■ decide the rights' of ffie parties should, now be settled; - and that the case should
 
 *94
 
 not be disposed of upon any technical or other objections which would leave it open to further litigátion. In this view of the subject it is unnecessary to give a detailed statement of th* proceedings in the court below. Such a statement would render this opinion needlessly tedious and complicated. We shall be better understood by a brief summary of the pleadings and evidence, together with the particular points upon'which our decision turns';'léáving-unnoticed' those parts of the record which can have no influence on the judgment we are about to give, nor vary in any degree the ultimate rights of the parties.
 

 At the time of the trial and verdict in the Circuit Court the declaration contained five' counts. But after the verdict was rendered, the plaintiffs in that court, with the leave of the court, entered a
 
 nolle prosequi
 
 upon the second, third, and fourth; and the judgment was entered-on the first arid the fifth. It is only of these two last mentioned counts, therefore, that it is necessary to speak. The verdict, was a general one for the plaintiffs, and their damages assessed at $11,000..
 

 The first count states that by virtue of certain contracts made with WiÚiam T. Barry, while he was postmaster-general, and services performed under them, the plaintiffs on the 1st of May, 1835, were entitled to receive and have allowed to them the sum of $12.2,000, and that that stun was accordingly credited to them on the books of the Post-office Department; and that Amos Kendall, the defendant in the court below, afterwards became-postmaster-general, andas-such illegally and maliciously caused the items composing the said amount to be suspended on the books of the department, and the plaintiffs to be charged therewith: whereby they were greatly-injured, and put to great expenses, and suffered in their business.and ■ credit.
 

 The fifth count recites the act of Congress of July 2d, 1836, by which the solicitor of the. Treasury was authorized to settle and adjust the claims of the plaintiffs for services rendered by them under contracts with William T. Barry, whilé he was postmaster-general, • and which had been suspended by Amos Kendall, then postmaster-general,, and to make them such allowances therefore as.upon a full examination of all the evidence might seem right and according to principles of equity; and the' postmaster-general directed to credit them with whatever sum or sums of money the solicitor should decide to be .due to them, for or on account of such service or contract ; and after this recital of the act of Congress, the plaintiffs proceed to aver that services had been performed by them under contracts.with William T. Barry, while he was postmaster-general, on whicl. their pay had been suspended by Amos Kendall, then post-' master-general, and that for these claims the solicitor of the Treasury allowed the plaintiffs large sums of money amounting to $162,727 05; that the defendant had notice of the premise?, and that it became his
 
 *95
 
 duly as postmaster-general to credit the .plaintiffs with this sum; but that he illegally and maliciously refused to. 'give the credit, by reason whereof the plaintiffs were subjected to great loss, their credit impaired, and they were obliged to incur heavy expenses in prosecuting their rights, to their damage in the sum of $100,000.
 

 The defendant plead not guilty, upon which issue was joined.
 

 At the trial, the plaintiffs offered in .evidence the record of the proceedings in the mandamus which, issued , from the Circuit Court upon their relation on the 7th day of June, 1837, commanding the said Amos Kendall to enter the credit for the sum awarded by the solicitor. It is needless to state at large the proceedings in that suit; as they are sufficiently set. forth in the report of the case in 12 Peters, 524; the judgment of the Circuit Court awarding a peremptory mandamus having been brought by writ of error before the Supreme Court, and there affirmed at January term, 1838. Various papers and letters were also offered in evidence by the plaintiffs to show that the allowances mentioned in the declaration had been suspended, by the defendant; and that after the award of the solicitor, andfoefore the original mandamus issued, he had refused to' credit $39,472 47,' part of the sum awarded, upon the ground that the items composing it were not a part of the.subject-matter referred; Und upon which, as the defendant insisted, the solicitor had no right to award. Other papers and letters were also offered showing that after the judgment of the Circuit Court awarding a peremptory mandamus had been affirmed in the-Supreme Court, the,plaintiffs demanded a credit for the above-mentioned' balance on the. 23d of* March, 1838: that the defendant declined entering the credit, alleging that a recent change in the post-office law had placed the books and accounts, of the department in the custody of the auditor;. and some, difficulty having arisen on this point, the Circuit Court, On the 30th of March, 1838, issued a mandamus commanding the postmaster-general to enter the credit on the books of the department; and to this writ the defendant made return on the 3d of April, 1838, that the said credit had been entered by the auditor who had the legal custody of the books. .
 

 The whole of. this evidence was objected to by the defendant, but the objection was overruled and the testimony given to the jury. And upon the evidence so offered by the plaintiffs, before any evidence was produced on his part, the defendant moved for the following instruction from the court:
 

 “ The defendant, upon each and every, of the plaintiffs’ said counts, severally and successively prayed the opinion of the court, and. their instruction to the jury that the evidence so as aforesaid produced and given on the "part of the plaintiffs, so far as the same is competent to sustain such count, is not competent and/sufficient to be left to the jury as evidence of any act or acts doné or omitted or refused to be done by the defendant, which legally laid him liable
 
 *96
 
 to the plaintiffs in this action, under such' count, for the.consequential' damages claimed by the plaintiffs in such corut.” — This instruction was refused and the defendant excepted.
 

 The question presented to the court by .this motion in substance was this: — Had the plaintiffs upon the evidence adduced by them shown- themselves entitled in point of law to'maintain their action for the causes stated in their declaration upon the breaches therein assigned, assuming that the jury believed the testimony to be true?
 

 The instruction asked for was in the riature of a demurrer-to the evidence, and in modern practice'has, in some of the states, taken . the place of it. In the Maryland courts, from which the Circuit Court borrowed its practice, >a prayer of tins' description at the time - of the'cession of the District and'for a long time before, was a familiar proceeding, and a demurrer to evidence seldom, if ever, resorted to. And the.refusal of the court was equivalent to an instruction that the plaintiffs had shown such a cause of action as would authorize the jury, if they believed the- evidence, to .find a verdict •in favour of the plaintiffs, and to assess-damages against the defendant for the causes of action stated in the declaration.
 

 , Now the cause of action stated in the first count is the suspension, •by the defendant, of the allowances made by his predecessor in office; and of the recharge of sums with which the plaintifis had. been credited by Mr. Barry when he was the postmaster-general. And it appeared in evidence, by the proceedings in the mandamus, that the plaintiffs being unable' to settle with the defendant the dispute between them on the subject, they applied to Congress for relief; that upon this application a law was passed referring the' rhatter to the solicitor of the Treasury, with directions that he should inquire into, and determine the equity of these claims, and make them such allowances therefor as might seem right according to .the principles- of equity; and that the postmaster-general should credit them with whatever sums of money, if, any, the solicitor should decide to be due; that the plaintiffs1 assehted to this reference,'- and-offered evidence before the solicitor that they were entitled to the allowances and credits claimed by them; and that, from the conduct of "the postmaster-general, in suspending and recharging these allowances and credits, they had been compelled to .pay a large amount in discounts and interest, in order to carry on their business ; and that-the solicitor had finally determined in favour of their claims, and awarded to them the sum hereinbefore mentioned, giving them, as appears in his report to Congress, interest on the money withheld from them; and also, that, before this suit was brought,' they had obtained a credit on the.books of the department for the whole sum awarded-by the solicitor.
 

 Assuming, for the sake of the argument, that an action might in the first instance have been sustained against the postmaster-general, can the plaintiffs still support a suit upon the original cause-of.
 
 *97
 
 action ? It was not a controversy between the plaintiffs and Amos Kendall as a private individual, but between them and a public officer acting for and on behalf of the United States. If they had sustained damage, it was the consequence of his act, and the question of damages was necessarily referred with the subject-matter in controversy, out of which that question arose. It. was an incident to the principal matters referred, and therefore within the scope of the reference; and it is not material to inqúire whether damages for the detention of the money were claimed or not, or allowed or not. In point of fact, however, the plaintiffs did claim interest on the money' withheld as a- damage sustained from the conduct of the postmaster-general, and offered' proof before the solicitor of the amount of discounts and interest they had been compelled to pay;' and, moreover, were allowed, in the award., a large sum. on • that account, which' was paid to them as well as the principal sum. The question, then, on the first count is, can a party, after a reference, an award, and the receipt of the money awarded, maintain a Suit on the original- cause of action upon the ground that he had not proved, before the referee, all the damages he had sustained? or that his damage exceeded the amount which the arbitrator awarded? We think not. The rule on that subject is well settled. It has been decided fin many cases, and- is clearly stated in Dunn-v. Murray, 9 B. & C. 780. The plaintiffs, upon their own showing, therefore, were not entitled to "maintain their action on the first count, -and:the Uircuit Court ought .so to have directed the jury.
 

 The judgment upon this count is also liable to another objection equally fatal. The acts complained of were not what the law terms ministerial, but we!re official acts done by the defendant in his character, of postmaster-general. The declaration, it is true, charges that' they were maliciously done, but that was not the ground upon which ffie Circuit'Court sustained the fiction eithef on this count or the fifth. For,- among other, instructions moved for oh .behalf of the defendant, the court .were requested to direct the jury:
 

 “ That, if .they found from the evidence '.that the postmaster-general acted from the- conviction that he had láwful' power and authority, .as postmaster-general to- set aside-the extra allowances made by his predecessor, and to suspend and recharge the same, and from a conviction that it was his official duty to do so; and if ffie plaintiffs suffered' no injury from such official act, but the inconveniences necessarily resulting therefrom, that ffie defendant was not liable.” _ •
 

 _ This.instruction was. refused; the court thereby.in effect giving ffie jury to understand that however correct and praiseworthy ffie motives of the officer might be, he was still liable to ffie action, and chargeable with damages.
 

 We are not aware of any case in England or in this country in which.it has .been held that a officer, acting to ffie~best of his
 
 *98
 
 judgment and from a sense of duty, in a matter .of account with an individual, has been held liable to an action for an error of judgment. The postmaster-general had undoubtedly the right to examine into this account, in order to ascertain whether there were any errors in it which he was authorized to correct, and whether the allowances had in fact been made by Mr. Barry; and he had a rightto suspend these items until he made his examination and formed his judgment. It repeatedly and unavoidably happens, in transactions with the government, that money due to an individual is withheld from him lor a time, and payment suspended in order to afford an opportunity for a more thorough examination. Sometimes erroneous constructions of the'law may lead to the final rejection of a’claim in cases •where it Ought to be allowed. - But a public officer is not liable to an, action if - he falls into error in a case where the act to be done is not-merely a ministerial one, but is one in relation to which it is his duty to exercise judgment and discretion; even although an individual may suffer by his mist alce. A contrary principle would indeed be pregnant with the greatest mischiefs. ' It is unnecessary, we think,, to refer to the many cases by which this doctrine has been established. It was fully recognised in the case of Gidley, Exec. of Holland,
 
 v.
 
 Ld. Palmerston,
 
 7
 
 J. B. Moore, 91, 3 B. & B. 275.
 

 The case in 9 Clark & Finnelly, 251, recently decided in England, in the House of Lords, has been much relied on in the argument for the defendant in error. But upon an examination of that case it will be found that it hacl been decided by the Court of Session in Scotland, in a former suit, between the same parties, that the act complained of was a mere ministerial act which the party was bound to perform; and that this judgment had been affirmed in the House of Lords. And the action against the party, for refusing to do the act, was maintained, not upon the ground, only that it was ministerial, but.because it had been decided to be Such by the highest judicial tribunal known to the laws of Great Britain. The refusabfor which the suit was brought took place after this.decision; and the learned Lords, by whom the case was decided, held that the act of refusal, under such, circumstances, .was to be regarded as wilful, and with knowledge'; that the refusabto obey the lawful decree of a court of justice was a wrong for which the party, who had sustained jnjury by it, might maintain an action, and recover damages against the wrongdoer. This case, therefore, is in no respect in conflict with the principles above stated; nor with the rule laid down- in the case of Gidley
 
 v.
 
 Ld. Palmerston.
 

 In the case before us the-settlement of the accounts of the plaintiffs properly belonged to the Post-office Department, of which the defendant was. the head. As the law then stood it was his duty to exercise his judgment upon them. He committed an error in supposing that he had a right to set aside allowances for services rendered upon which his predecessor in office had finally decided. But as the
 
 *99
 
 case admits that he acted from a sense of public duty and without malice, his mistake in a matter properly belonging to the department over which he presided can give no cause of action against him.
 

 We proceed to the fifth count. But beforé we examine the cause of action there stated, it will be proper.to advert to the principles settled by this court in the case of the mandamus hereinbefore referred .to. The court in that case, speaking of the nature and character of the proceeding by mandamus, which had been fully argued at the bar, said that it. was an action or suit brought in a court of justice, asserting a right, and prosecuted according to the forms of judicial proceeding; and that a party was entitled to it when' there was no other adequate remedy; and that although- in the case then-before them the plaintiffs in the court below might have brought their action against the defendant for damages bn account of his refusal to give the credit directed by the act of Congress, yet as that remedy might not be adequate to afford redress, they were, as a matter oif right, entitled to pursue the remedy by mandamus.
 

 Now, the former case was between these same parties, and the wrong then complained of by the plaintiffs, as well as in'the case before us on the fifth count, was the refusal of the defendant to enter a credit on the books of the Post-office Department for the amount awarded by the solicitor. In other words, it was- for the refusal to pay them a sum of money to-which they were lawfully entitled. The credit on the books was nothing more than the form in which thé act of Congress, referring the dispute to the solicitor, directed the payment to be made. For the object and effect of that entry was to discharge the plaintiffs from so much- money, if on other accounts they were debtors to that amount; and .if no other debt was due from them to the United States, the credit entitled them to receive at once from the government the amount credited. The action of mandamus was brought to recover it, and the plaintiffs show by their evidence that they did recover it in that suit. • The gist of the action in that casé was tire breach of duty in not entering the credit, and it was assigned by the plaintiffs as their cause of action. The cause of action in the present case is tire same; and the breach here assigned, as well as in the former case, is the refusal of the defendant to enter this credit. The evidence to prove thé plaintiffs’ cause of action is also identical in both actions. Indeed, the record of the proceedings in the mandamus is the testimony relied on to show the refusal of the postmaster-general, and the circumstances under which he refused, and the reasons he assigned for it. But where a party has a choice of remedies for a.wrong done to him, and he elects one, and proceeds to judgment, and obtains the fruits of his judgment, can he, in any case, afterwards proceed in another suit for the same cause of action? It is true that in the suit by mandamus the plaintiffs could recover notning beyond the amount awarded. But they knew that, when they* elected "the remedy. If the goods of a
 
 *100
 
 party are forcibly taken .away under circumstances of violence and aggravation,be may bring trespass, and in that form of action recover ‘•not only the value of the property, but also what are called vindictive damages — that is, such damages as the jury may think proper to give- to punish the wrongdoer. But if instead of an action of trespass he elects to bring trover, where he can recover only the value , of the property, it never has been supposed that,, after having proser cuted the.suit to judgment and received the damages awarded him, he can then bring trespass' upon, the ground that he could not in the action of trover give evidence of the circumstance of aggravation, which entitled him to demand vindictive damages.
 

 -'The saíne principle is involved here.. The plaintiffs showr that they have sued for and recovered in the mandamus, suit the full •amount of.the award; and having- recovered the debt they now bring another suit upon the same cause of. action, because in the former one they could not recover damages for the detention of the money. The., law does not permit a party-to be twice harassed for the same, cause of action; nor suffer á plaintiff-to proceed in one suit recover the' principal sum of money, and then support another -to recover ■ damages for the detention; This principle will be found to be fully recognised in 2 Bl. Rep. 830, 831; 5 Co. 61, Sparry’s case; Com. Dig. tit. Action, K. 3. And in the 'case of Moses
 
 v.
 
 Macfarlan, 2 Burr. 1010, Ld. Mansfield held that the plaintiff having a right to bring an action of assumpsit for-money had and received to his use on a special action on the case on an agreement, and haying made his election by bringing assumpsit, a recovery in that- .action would bar one on the agreement, although in the latter he could not only -recover the money claimed in the action of assumpsit, but also the costs and expenses he had been put to. The case before us falls directly within the rule stated by Ld. Mansfield.
 

 This objection applies with • still more force, when,' as in this instance, the party.has proceeded by mandamus. - The remedy in that form, originally, was not regarded as an action, by the party, but as a prerogative writ commanding the execution of an act, where otherwise justice would be obstructed; and issuing only in Cases relating-to' the public and the govémment; and it was never issued when the party had any other remedy. It is now regarded as an action by the party on whose .relation it is granted, but subject still to this restriction, that it' cannot be granted to a party where the law áffords him any other adequate means of r.edress. Whenever, therefore, a mandamus-is applied for, it is upon the gtound that he cannot obtain redress in any other form of proceeding. ■; And to allow him to bring another aotion for the very same cause after he has obtained the benefit' of the mandamus, would not only be harassing the defendant with two suits for the same thing, hut would be inconsistent with the grounds upon which he asked for the'mandamus, and inconsistent. also with the decision of the court which awarded it. If he had
 
 *101
 
 another remedy, which was incomplete and inadequate, he abandoned it fey applying for and obtaining the mandamus. It is treáted both by him and the court as no remedy. Such was obviously the meaning of the Supreme Court in the -Opinion delivered in the former suit between these parties, where -.they speak of the action on the case, and give him the mandamus, 'because the other form of action was inadequate to redress the injury, and they would not therefore require the' plaintiffs to pursue it. And they speak of the action on the. case as an alternative remedy; not as accumulative and in addition to the mandamus. .In the case in 9 Clark & Finnelly, 251, hereinbefore mentioned upon another point, the attorney-general in his argument said that no other action would lie in any case where the party was entitled to a mandamus. And Ld. Campbell, in giving-his judgment, said that this proposition-was hot universally true}-and at any rate applied only tQ the original 'grant of the mandamS'8, and not to the remedy, for. disobeying it; and that no case had been cited to show that an action would not lie for disobedience to the judgment of the court. This remark upon the proposition stated by the attorney-general shows clearly that in his judgment you could not resort to a. mandamus and to an action on the case also for the same thing: If the postmaster-general had refused to obey the mandamus, then indeed an action on the case might have been maintained against him. But the- present suit is not brought on that, ground. No question is presented here as to the necessity of pleading a former recovery in .bar, nor as to the right to offer it in evidence upon the general issue. The point in the Circuit Court did not arise upon the pleading of the defendant, nor upon' evidence offered by him; but upon the c^se made by the plaintiffs, in which, by the same evidence that proved their original .cause of. action, they'also proved that they had already sued the defendant upon it, and recovered a judgment, which had been satisfied before this suit was brought. And we think upon such evidence the instruction first above mentioned ought to have been given on: this (the. fifth) count, as it appeared by the plaintiffs’ own-showing, that they had’already recovered satisfaction for the injury complained of in their declaration. •
 

 The case before us is altogether unlike the cases referred to -in the argument, where, after a party has been admitted or restored to an office, he has maintained an action of assuhipsit.or case to recover the emoluments which had been received by another, or of which he had been deprived during the time of his exclusion. In those casés the cause of action in the mandamus was the exclusion from office; and the suit afterwards brought was to recover the emoluments and profits to which his admission or restoration to office showed him to have been.legally entitled. The action of assumpsit or case would not have restored him to the office', nor have secured his right to the profits. But in the case before the court, if this action had been resorted to in the first instance, instead of the 'mandamus, the plaintiffs
 
 *102
 
 could have recovered the amount due on the award, and the damages arising from its unlawful detention must have been assessed and recovered in. the same verdict. Clearly, they could not have maintained one action on the case for the amount-due, and then brought another to recover the damages; and this, not because both were actions on the case, but because they could not be permitted to harass the. defendant with two suits for the same thing, no matter by what name the actions may be technically called, nor whether both are actions on the case, or one of them called a mandamus.
 

 But if this action could have been maintained, we think that most of the evidence admitted by the Circuit Court to enhance the damages ought not to have been received.' It consisted" chiefly of discounts ana interest paid by.the plaintiffs before the award of, the solicitor, and of expenses on journeys and tavern bills, and fees paid to counsel for prosecuting their -claim - before Congress and the courts. It appears by the record that before this evidence was- offered the court had instructed'the jury, that-malice on the part of the defendant was not necessary to support the -Action; and. it appears also that the jury, which found the verdict and assessed the damages, declared that their Verdict wás not- founded on any .idea that the defendant did the acts complained of, and for which' they, gave the damages of $11,000,- with any intent, other than a desire faithfully to perform the duties of his office of postmaster-general, and to protect the public interests committed to his charge, and that the damages were given ■on the ground that his acts were illegal, and that the s.um given was the amount of the actual damage estimated to have resulted from his ■ illegal acts.
 

 We have already said that although this action is in form.for a tort, yet in substance and in truth it is an action for the non-payment of money. And upon the. principles upon which it was supported by-the court, and decided by the jury, if there had been no proceeding by mandamus to bar the action, the legal measure of damages upon the fifth count would undoubtedly have been the amount due on the award;-with interest upon it^
 

 The testimony, however, appears to have been offered chiefly under the first count, because the items for interest paid, and travelling and'tayern expenses, for the most part, bear dates before the award, and also a portion of the fees of counsel., The evidence was certainly inadmissible under this count, since, for the reasons already given, no action could be maintained upon it, if there had been no previous proceeding by mandamus, and consequently no damages could bé recovered upon it. But independently of this consideration, and even if the action could have been sustained, there' are insuperable objections to the admission of this testimony. In the first place, no special damages 'are laid 'in the declaration; and in that form of pleading no damages are recoverable,-but such as the law. implies to have accrued from the wrong complained of; 1 Chit. Pl. 385: and
 
 *103
 
 certainly the law does not imply damages of the description above stated. But we think the evidence was not admissible in any form of pleading. In the case of Hathaway
 
 v.
 
 Barrow, 1 Camp. 151, in an action on the case for a conspiracy to prevent the plaintiff from obtaining his certificate under a commission of bankruptcy, the court refused to receive evidence of extra costs incurred by the plaintiff in a petition before the chancellor. In the case of Jenkins
 
 v.
 
 Biddulph, 4 Bingh. 160, in an action against a sheriff for a false return, the court said they were clearly of opinion that the 'plaintiff was not entitled to recover the extra costs he had paid.; that, as between the attorneys and their clients,, the case might be different, because the attorney might have special instructions, which may warrant him in incurring the extra costs, but that in a case like the one before them the plaintiff could only claim such .costs as the prothonotary had taxed. And in the case of Grace
 
 v.
 
 Morgan, 2 Bingh. N. C. 534, in an action for a vexatious and excessive distress, the plaintiff was not allowed to recover as damages the extra costs in an action of replevin which the plaintiff had brought for the goods distrained; and the case in 1 Stark. 306, in which a contrary principle had been adopted, was overruled.
 

 These were stronger cases for extra costs than the one before us. The admission of the testimony in relation to the largest item in these charges, that is, for interest paid by the plaintiffs, amounting to more than $9000, is still more objectionable. For it appears from the-statement in the exception that the very same account had been laid before the solicitor, and had induced him, as he states in his report to Congress, to make the plaintiffs an allowance in his award for interest, amounting to $6893 93. And to admit , this evidence again in this suit was to enable the plaintiffs to recover twice for the same thing; and after having received from the United States what was deemed by the referee a just compensation for this item of damage, to recover it over again from the defendant.
 

 There are several other questions stated in the record, but it is needless, to remark upon them, as. the opinions already expressed dispose of the whole case. The judgment of the Circuit Court must be reversed.
 

 [Forthe dissenting opinion of Mr. Justice McLéan, see App. p.800.]