### COMPTON *v.* HEISSENBUTTEL *et al.*

*(Common Pleas of New York City and County, General Term. December 7, 1891.)*

DAMAGES—BREACH OF CONTRACT—FREIGHT—WHARFAGE.

> Where the consignee agrees to pay to the owner of a canal-boat wharfage as part of the freight, he is only liable for the actual wharfage charges incurred; and the owner, in an action for the breach of the consignee's agreement, cannot recover damages resulting from the enforcement of the wharfinger's lien against him. 13 N. Y. Supp. 594, reversed.

Appeal from trial term. Reversed.

Action by Oscar Compton against John D. Heissenbuttel and others to recover damages arising from the breach of defendants' agreement to pay, as a part of the freight agreed to be paid to plaintiff for the carriage of coal, the charge for wharfage incurred by the use of a wharf at Gowanus creek, Brooklyn, N. Y., for the purposes of plaintiff's canal-boat while awaiting discharge of its load. There was a verdict for plaintiff, and from judgment thereon defendants appeal.

Argued before ALLEN,[1] BISCHOFF, and PRYOR, JJ.

*James L. Bishop*, for appellants. *Hyland & Zabriskie*, for respondent.

BISCHOFF, J. On the trial of this action defendants contended that under the agreement for the breach of which this action was brought plaintiff's recovery should be limited to $10, the amount of wharfage incurred by his boat for the use of the wharf at Gowanus creek, with the legal interest on that amount. Seasonable requests were made that the jury be so instructed, which were refused, and the exceptions to these refusals present the main question addressed to us for review. An examination of the briefs of counsel for the respective parties to this appeal shows that they are at variance as to the terms of the agreement. Defendants insist that the amount of wharfage was payable from them to the plaintiff, and plaintiff contends that it was paya-

[1]Judge ALLEN died after the argument of this cause, and before the decision was announced.

ble from defendants to the wharf-owner. Resort must therefore be had to the pleadings and the evidence adduced on the trial in support of the allegations therein contained for information as to the extent of defendants' undertaking. The record upon which we are to determine this appeal indicates that the court below erred in its assumption that such undertaking was as urged by plaintiff; hence the application of the measure of damages under which plaintiff was permitted to recover was inappropriate, and the defendants' exceptions thereto were well taken. Had the defendants' engagement been to pay the amount of wharfage to the wharf-owner, thus satisfying the latter's lien upon the boat, then the non-performance of that engagment would have imposed upon the defendants a liability towards the plaintiff to recompense him for the loss of the use of his boat while it was necessarily in the custody of the United States marshal under his seizure in the wharf-owner's proceedings for the enforcement of his lien, together with the costs of such proceedings, and the amount of wharfage necessarily paid by the plaintiff to enable him to recover possession of his boat. *Tuers* v. *Tuers*, 100 N. Y. 196, 2 N. E. Rep. 922. Such, however, was not the defendants' agreement, as will be seen by reference to the complaint and the testimony adduced upon the trial in support of the agreement alleged. The complaint recites that in or about the month of March, 1882, S. H. Brown & Co., of South Amboy, N. J., shipped a cargo of coal to the defendants, and then proceeds that "the defendants agreed to pay to the owner of said canal-boat, (the plaintiff,) as freight for the transportation of said cargo, eighteen (18) cents per ton along-side, and all wharfage at the place of consignment, which was fixed by law at the rate of fifty (50) cents per day." Plaintiff testified: "I told him [defendant Heissenbuttel] we had a boat. He asked us what we wanted. We said eighteen cents and the wharfage. He said: ' That is all right. That is the usual rate, and the usual condition, to pay the wharfage. We will give it to you,'—and he gave us the order in pursuance of that conversation." Turner, a witness for the plaintiff, testified as follows: "*Question*. State what Mr. Heissenbuttel said as to what he would pay. *Answer*. He was to give eighteen cents a ton along-side, and wharfages paid. *Q*. And pay the wharfage? *A*. Yes, according to custom." This testimony comprised all the evidence concerning the terms of the agreement for the carriage of the coal, and we fail to find therein anything which demonstrates any undertaking on the part of the defendants to do other than to pay plaintiff a sum equal to the amount of wharfage to be incurred by him; and, considered in connection with the agreement specifically set out in the complaint, it is conclusive of the fact that all the defendants promised to do was to pay plaintiff as freight a sum equal to 18 cents for each ton of coal, with the amount of wharfage added thereto, reference to the wharfage deing made only for the purpose of determining the precise amount to be paid by the defendants to the plaintiff. That being so, it was not incumbent upon the defendants to see to the application of a part of the aggregate sum payable by them for freight in satisfaction of the wharf-owner's lien upon plaintiff's boat for the amount of wharfage due him, and defendants' omission to make such application cannot, therefore, support a recovery against them by the owner of the boat for damages resulting to him from the enforcement of the wharf-owner's lien, which could have been averted by seasonable payment of the amount thereof to the wharf-owner. The agreement in evidence bound defendants to the performance of no other act than the payment to the plaintiff of the stipulated sum for freight, and to the extent of such aggregate sum the plaintiff was constituted the creditor of the defendants.

It is elementary that the breach of the debtor's promise to pay a sum of money entitles the creditor to whom it was payable to no greater recovery than the principal of the debt, with interest at the legal rate from the time the principal became payable, the legal interest comprising the full measure of the creditor's damage for the detention of the debt. "No matter [2 Whart.

Cont. § 966] how great may be the damage a creditor may sustain from the non-payment of his debt at maturity, he is not entitled to recover anything beyond principal and interest from his debtor." See, also, *Loudon* v. *Taxing Dist.*, 104 U. S. 771; *Insurance Co.* v. *Piaggio*, 16 Wall. 378; *Kendall* v. *Stokes*, 3 How. 87, 102; *Fletcher* v. *Tayleur*, 17 C. B. 29. This case is not like that of *Dubois* v. *Hermance*, 56 N. Y. 673, cited by respondent, seemingly with much confidence, in support of the measure of damages applied at the trial. In the case last cited the defendants had contractually assumed, so far as the plaintiff was concerned, a primary obligation to discharge plaintiff's contracts with others, and for the breach of that obligation the defendants were held answerable for the damages recovered against the plaintiff for breach of the contract. In the case at bar the defendants did not undertake to satisfy the wharf-owner's demand against the plaintiff for wharfage to be incurred, but to pay plaintiff a sum equivalent to the amount of such wharfage. It therefore still remained for plaintiff, so far as concerned the defendants, to satisfy the wharf-owner's lien, and the consequences of an omission so to do are in no manner attributable to the neglect of the defendants. The judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event.