**CITY OF WORCESTER, Plaintiff,**

v.

**HCA MANAGEMENT COMPANY, INC., Defendant and Third–Party Plaintiff,**

v.

**BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, and Ernst & Young, Third–Party Defendants.**

**Civ. A. No. 90–40012–XX.**

United States District Court, D. Massachusetts.

Nov. 26, 1990.

---

M. Allison Hamm, Gary S. Brackett, Elaine M. Lucas, Worcester, Mass., for City of Worcester.

William A. Horne, Eric L. Yaffe, Goulston & Storrs, Boston, Mass., HCA Management Co., Inc.

Susan L. Carity, Blue Cross and Blue Shield, of Massachusetts, Boston, Mass., for Blue Cross Blue Shield of Massachusetts.

Michael P. Angelini, Louis M. Ciavarra, Vincent F. O'Rourke, Bowditch & Dewey, Worcester, Mass., for Ernst & Young.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

### I. Procedural Background.

On or about July 2, 1984, the City of Worcester (the "City") and HCA Management Company, Inc. ("Management") signed a contract in which Management agreed to manage the affairs of the Worcester City Hospital (the "Hospital"). During the term of the management contract, duplicate Medicare payments were mistakenly paid to the Hospital and accepted by Management. The complaint in this case, brought by the City, alleges that by accepting the duplicate Medicare payments: (1) Management breached its management contract by failing to alert the City to the true financial condition of the Hospital and (2) Management was negligent in carrying out its obligation to conduct, supervise, and manage the day-to-day operations of the Hospital. The City alleges that it suffered damages in excess of $50,000 due to the acceptance of the duplicate payments.

In answering the City's complaint, Management filed a counterclaim against the City for wrongful termination of the management contract. In addition, Management filed third-party complaints against Blue Cross Blue Shield ("Blue Cross") and Ernst & Young for negligence in the conduct of their respective obligations to the Hospital. Management alleges that it is entitled to recover from the third-party defendants all or part of any liability it may have to the City. Specifically, Management alleges that Blue Cross breached its duty to make proper and accurate Medicare payments to the Hospital, a duty Blue Cross had assumed pursuant to a contract with the United States Health Care Financing Administration ("Administration").[1] Similarly, Management alleges that Ernst & Young had a duty to conduct audit services for the Hospital and, by failing to discover and report any duplicate Medicare payments, it performed its servic-

---

**1.** Management argues that Blue Cross may be liable to the City as well as itself, either directly or for contribution, for the negligent performance of Blue Cross' contractual duty undertaken on behalf of the Administration. Management relies on a line of Massachusetts cases which hold that a party who contracts to perform services with another party may be liable in tort to a third party if it is foreseeable that the third party would rely on the performance of the contracted services. See *Craig v. Everett M. Brooks Co.*, 351 Mass. 497, 499–501, 222 N.E.2d 752, 754–55 (1967) (The negligent placing of stakes by a civil engineer for the purpose of marking a proposed road could be the basis for a cause of action by the contractor who was to construct the road). In *Craig,* the Supreme Judicial Court recognized the tort of negligent misrepresentation which allows recovery for losses sustained due to negligent misrepresentations made to one not in contractual privity with the defendant. *Craig,* 351 Mass. at 499, 222 N.E.2d at 754. In that case, the court held that the placing of stakes could be considered a representation for purposes of the cause of action. *Craig,* 351 Mass. at 501, 222 N.E.2d at 755. Although Management cites three other cases in support of this cause of action, this Court notes

that these cases are not directly on point because in those cases the potentially liable party had "a legally recognized duty" which it owed to the third party plaintiff. *Flattery v. Gregory,* 397 Mass. 143, 146, 489 N.E.2d 1257, 1259 (1986) (insurance agent could not be held liable for failing to obtain insurance coverage *above* the statutory minimum) (emphasis added); *accord Rae v. Air–Speed, Inc.,* 386 Mass. 187, 192–93, 435 N.E.2d 628, 631 (1982) (insurance agent who promises employer that he will obtain workmen's compensation may be liable to widow of employee for his failure to obtain the insurance); *LaClair v. Silberline Mfg. Co.,* 379 Mass. 21, 26–30, 393 N.E.2d 867, 870–73 (1979) (corporate president could be liable for failing to obtain workmen's compensation). Such is not the case here. The present claim depends for its vitality entirely on the reach of the *Craig* decision. It thus turns on whether a payment of money, i.e., the duplicate Medicare payments, may be considered a "representation" for purposes of recovery under *Craig.* At this stage in the litigation, therefore, this Court assumes, without deciding, that Management's claim against Blue Cross states a cause of action valid under the common law of Massachusetts.

es in a negligent manner.[2]

Both Ernst & Young and Blue Cross move to dismiss the third-party complaints. In its motion, Ernst & Young moves to dismiss the third-party complaint on the grounds of lack of subject matter jurisdiction. Blue Cross, on the other hand, argues that it should be dropped as a third-party because, although it made the allegedly duplicative Medicare payments, it was acting as a fiscal intermediary on behalf of the Administrator of the United States Health Care Financing Administration ("Administrator") and is therefore immune from suit upon a theory of sovereign immunity.

## II. Subject Matter Jurisdiction.

As there is no independent basis for subject matter jurisdiction over Ernst & Young, the issue to be determined upon this motion is whether pendent party or ancillary jurisdiction provide a basis for Management to maintain its third-party complaint against Ernst & Young.[3] Both pendent and ancillary jurisdiction provide a means for federal courts to adjudicate a case or controversy in its entirety, including matters raised over which the court would not otherwise have jurisdiction. *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 2006–07, 104 L.Ed.2d 593 (1989); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); 6 C. Wright, A. Miller, M. Kane, Federal Practice and Procedure sec. 1444 (2d 1990). Over the years, however, the distinctions between the theories of pendent and ancillary jurisdiction have become clouded. *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 370 n. 8, 98 S.Ct. 2396, 2401 n. 8, 57 L.Ed.2d 274 (1978); *Aldinger v. Howard*, 427 U.S. 1, 13, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276

(1976) ("there is little profit in attempting to decide ... whether there are any 'principled' differences between pendent and ancillary jurisdiction.") In light of the recent decision in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), in which the Supreme Court discusses the application of pendent-party jurisdiction, this Court must engage in an analysis of the current status of the law of pendent and ancillary jurisdiction in order to determine the theory applicable to the allegations of this case.

### A. Pendent-claim, Pendent-party, or Ancillary Jurisdiction?

In *Gibbs*, 383 U.S. at 721–29, 86 S.Ct. at 1136, the Supreme Court applied the principle of pendent-claim jurisdiction in allowing a plaintiff to assert a state law claim along with a federal claim under the Labor Relations Management Act against a single defendant. The Court in that case held that, "[p]endent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority ...' U.S. Const., Art. III, sec. 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138 (emphasis in original). In other words, in order to join a state law claim against a party already properly before the court on a federal claim, the Supreme Court required that the "state and federal claims ... derive from a common nucleus of operative fact."

Later, in *Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) the Supreme Court analyzed whether a federal court

---

**2.** As is the case with the claim against Blue Cross, for the moment this Court assumes, without deciding, that Management has stated a cause of action for contribution or negligent misrepresentation against Ernst & Young, *see supra* note 1.

**3.** Clearly, diversity jurisdiction is lacking as to Ernst & Young. Since Ernst & Young is a partnership rather than a corporation, diversity

is based on the actual citizenship of each of its members. *Carden v. Arkoma Associates*, —— U.S. ——, 110 S.Ct. 1015, 1021, 108 L.Ed.2d 157 (1990). *See also* 13B C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure sec. 3630 (2d ed. 1984). It is undisputed here that certain Ernst & Young partners are citizens of Massachusetts, the place of business of the City, and others are citizens of Tennessee, the principal place of business of Management.

could exercise jurisdiction over a non-diverse defendant on a state law tort claim. In *Kroger*, the plaintiff brought a suit for wrongful death in federal court against the Omaha Public Power District (the "Power District"). Jurisdiction was based on diversity of citizenship. The Power District filed a third-party complaint against Owen Equipment & Erection Co. ("Owen"), the manufacturer of the product at issue. The plaintiff subsequently amended her complaint to include Owen as a defendant in her claim. Eventually, the Power District was granted summary judgment, leaving Owen as the sole defendant in the case. During trial it was discovered that there was no diversity of citizenship between the plaintiff and Owen. *Kroger*, 437 U.S. at 367–68, 98 S.Ct. at 2399–2400. Without distinguishing between ancillary and pendent jurisdiction, *Kroger*, 437 U.S. at 370, n. 8, 98 S.Ct. at 2401, n. 8, the Supreme Court held that in order for a federal court to exercise jurisdiction in this case, the court must consider: (1) whether the federal and non-federal claims arise from a "common nucleus of operative fact;" (2) the posture in which the nonfederal claim is asserted and (3) whether Congress explicitly or implicitly negated the exercise of jurisdiction over the particular nonfederal claim in the specific statute which grants jurisdiction over the federal claim. *Kroger*, 437 U.S. at 373, 98 S.Ct. at 2402 (citations omitted).

Recently, the Supreme Court in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) [1] distinguished between the *Gibbs* test and the *Kroger* test, noting that the *Gibbs* test was appropriate for pendent-claim jurisdiction but the *Kroger* considerations must be made in pendent-party situations. *Finley*, 490 U.S. at 548–550, 109 S.Ct. at 2006–07. The Court implied that under the *Gibbs* test pendent-claim jurisdiction does not require a court to evaluate the statute which confers jurisdiction over the federal claim because pendent-claim jurisdiction merely provides a ground to assert nonfederal claims against parties *already properly before the court* and therefore it allows jurisdiction to the "full extent permitted by the Constitution." *Finley*, 490 U.S. at 548, 109 S.Ct. at 2006. The Court went on to note that pendent-party jurisdiction, on the other hand, requires the additional consideration of: (1) the posture of the nonfederal claim and (2) the jurisdictional statute, *Finley*, 490 U.S. at 550–554, 109 S.Ct. at 2007–09, because "the addition of a completely new party would run counter to the well-established principle that federal courts ... are courts of limited jurisdiction marked out by Congress." *Finley*, 490 U.S. at 550, 109 S.Ct. at 2007 (quoting *Aldinger*, 427 U.S. at 15, 96 S.Ct. at 2420).

In addition to distinguishing between pendent-claim and pendent-party jurisdiction, the Supreme Court in *Finley* stated in *dicta* that there is a "narrow class of cases [in which] a federal court may assert authority over such a claim 'ancillary' to jurisdiction otherwise properly vested" in federal court. *Finley*, 490 U.S. at 551, 109 S.Ct. at 2008. The *Finley* court noted that *examples* of ancillary jurisdiction include: (1) the intervention of a party in an action in federal court for the purpose of protecting its claim to contested assets which are within the federal court's exclusive control or (2) the addition of a party in federal court when that party is necessary to give effect to a federal court's judgment. *Id.* While at least one commentator has questioned the continued validity of ancillary jurisdiction after the Court's *dicta* in *Finley*, C. Wright, A. Miller, M. Kane, Federal Practice and Procedure, sec. 1444 at 328 (2d. ed. 1990), there are indications that the Supreme Court did not intend for its "examples" of ancillary jurisdiction to be exclusive. In this vein, it is noteworthy that the Supreme Court in *Kroger* stated that the "impleader by a defendant of a third-party defendant" is always ancillary to the primary claim because "[a] third-party complaint depends at least in part upon the

---

**4.** In *Finley*, a plaintiff brought suit against the United States under the Federal Tort Claims Act claiming that the Federal Aviation Administration had been negligent in its air traffic control functions. Subsequently, the plaintiff amended her complaint to add the city of San Diego and the San Diego Gas and Electric Company as defendants.

resolution of the primary lawsuit." *Kroger*, 437 U.S. at 375–76, 98 S.Ct. at 2403–04; *Federal Deposit Ins. Corp. v. Otero*, 598 F.2d 627, 632 (1st Cir.1979). The *Kroger* court went on to state that "ancillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court." *Id.;* C. Wright, A. Miller, M. Kane, Federal Practice and Procedure sec. 1444 at 321–22 (2d ed. 1990) (a claim by a defendant against a third-party defendant is within a federal court's ancillary jurisdiction and no independent basis for jurisdiction is necessary if the original parties are properly before the court). Since the Court's statement in *Finley* is *dicta* and the two types of ancillary jurisdiction described in *Finley* are merely used as "examples" of the theory of ancillary jurisdiction, it would be a broad leap indeed for this Court to hold that the Supreme Court intended to disavow the express statements in *Kroger*. This Court, therefore, considers both *Kroger* and *Finley* in defining the boundaries of ancillary jurisdiction.

## B. *Ancillary Jurisdiction Proper Here.*

 The case at hand falls squarely within the language of the *Kroger* Court in describing ancillary jurisdiction. In this case, Management was haled into federal court by the City to defend itself against state common law claims of negligence and breach of contract. The City, not Management, chose to bring this suit in federal court. Not surprisingly, in its attempt to avoid its liability to the City, Management has filed a third-party complaint impleading Ernst & Young for contribution or indemnification for any liability Management is found to have toward the City. As noted in *Kroger*, 437 U.S. at 376, 98 S.Ct. at 2404,

the third-party complaint in this case depends on the resolution of the primary law suit and therefore involves more than mere factual similarity, but rather is "logical[ly] dependen[t]" on the primary suit. Although the Supreme Court in *Kroger* held that the diversity statute was intended by Congress to be strictly construed, requiring complete diversity between all plaintiffs and all defendants, *Kroger*, 437 U.S. at 373–74, 98 S.Ct. at 2402–03, the Court also noted in *Kroger* that "Congress did not intend to confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights or effectively to resolve an entire, logically entwined lawsuit. Those practical needs are the basis of the doctrine of ancillary jurisdiction." *Kroger*, 437 U.S. at 377, 98 S.Ct. at 2404. The third-party complaint against Ernst & Young is precisely the type of claim described in *Kroger* as being ancillary to the primary lawsuit and, although jurisdiction over the primary suit is based on diversity of citizenship, the principles of ancillary jurisdiction are such that the strict construction of the diversity statute does not prevent this Court from "effectively resolv[ing this] entire, logically entwined lawsuit." *Kroger*, 437 U.S. at 377, 98 S.Ct. at 2404.

Accordingly, since Management may here maintain this third party action against Ernst & Young under principles of ancillary jurisdiction, the motion of Ernst & Young to dismiss the third-party complaint is DENIED.

## III. Sovereign Immunity

 In its motion,[5] Blue Cross argues that its presence in this suit is unnecessary because the Administrator is the "real party of [sic] interest in any litigation involving the administration of the program."[6]

---

5. Although Blue Cross styles its motion as one arising under Fed.R.Civ.P. 21, this Court will treat the motion as one invoking Fed.R.Civ.P. 12(b)(6) since the actual issue is whether Management has stated a claim against Blue Cross for which relief may be granted. *See* 5A C. Wright, A. Miller, Federal Practice and Procedure sec. 1357 at 354–55 (2d ed. 1990) (affirma-

tive defense of immunity may be considered on a motion to dismiss).

6. Regulation 42 CFR 421.5(b) (1982) states: [i]ntermediaries and carriers act on behalf of the Administrator in carrying out certain administrative responsibilities that the law imposes. Accordingly, their agreements and

As the Administrator is an agent of the federal government, this regulation has been interpreted to extend the "protective mantle of the government's sovereign immunity" to encompass the actions of fiscal intermediaries. *Group Health, Inc. v. Blue Cross Assn.*, 625 F.Supp. 69, 74 (S.D. N.Y.1985). Thus, the issue to be determined upon this motion is whether, viewing the complaint in a light most favorable to Management, it will be able to prove any set of facts which would entitle Management to relief against Blue Cross. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

 It is well established that the federal government, its agencies and employees, when sued in their official capacity, are immune from tort actions for damages unless Congress has expressly consented to being sued. *United States v. Testan*, 424 U.S. 392, 399–400, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976). Since the government can only act through its agents, "the denomination of the party defendant by the plaintiff" does not determine whether the government is the real party in interest and therefore whether sovereign immunity should bar the suit. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687–88, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949). Rather, if the relief sought in a complaint will ultimately be borne by the sovereign, the suit is against the sovereign even if the complaint names only an officer of the government as a party defendant. *Id.* In this case, Blue Cross has contracted to administer the Medicare program for the federal government pursuant to 42 U.S.C. § 1395h (1988). The issue of sovereign immunity, therefore, centers on whether Blue Cross performed these delegated federal duties as a private corporation or as a federal employee.

 A federal employee who exercises discretion in carrying out official duties enjoys either a qualified or an absolute immunity from liability for torts,[7] as long as the action taken by the federal employee is within the authority delegated from the government. *Harlow v. Fitzgerald*, 457 U.S. 800, 806–07, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982); *Butz v. Economou*, 438 U.S. 478, 506–07, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978); *Barr v. Matteo*, 360 U.S. 564, 569–74, 79 S.Ct. 1335, 1338–41, 3 L.Ed.2d 1434 (1959). It is clear that "[f]ederal officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law." *Butz*, 438 U.S. at 507, 98 S.Ct. at 2911. A federal employee will be liable, however, if his actions exceed his delegated authority. *Butz*, 438 U.S. at 490–96, 98 S.Ct. at 2902–05 (Court compares *Little v. Barreme*, 2 Cranch 170, 6 U.S. 170, 2 L.Ed. 243 [1804] and *Bates v. Clark*, 95 U.S. 204, 24 L.Ed. 471 [1877] where federal employees were held to have acted beyond their authority with *Kendall v. Stokes*, 3 How. 87, 44 U.S. 87, 11 L.Ed. 506 [1845] where a federal employee was immune from liability because his actions were a mistake of judgment within his delegated authority.) In *Barr*, the Supreme Court stated that sovereign immunity would apply as long as the federal official's actions were "within the outer perimeter of [his] line of duty." 360 U.S. at 575, 79 S.Ct. at 1341. Therefore, a federal employee who exercises discretion in carrying out his official duties will be immune from liability for common-law torts as long as his actions are within the outer perimeter of his delegated authority. *Ricci v. Key Bancshares of Maine, Inc.*, 768 F.2d 456, 462 (1st Cir.1985).

 The Supreme Court has long held that, pursuant to sovereign immunity,

---

contracts contain clauses providing for indemnification with respect to actions taken on behalf of the Administrator and the Administrator is the real party of [sic] interest in any litigation involving the administration of the program.

7. Qualified, rather than absolute, immunity applies when a federal employee violates an established constitutional rule, unless "absolute im-

munity is essential for the conduct of public business." *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). As the complaint in this case does not allege intentional misconduct by Blue Cross, this Court will not delve into the specific situations in which qualified immunity, instead of absolute immunity, will apply to the actions of a federal employee.

a private company which contracts with the federal government to perform the duties of the government will not be held liable for its actions on behalf of the government. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20–21, 60 S.Ct. 413, 414–15, 84 L.Ed. 554 (1940). Since the private party is performing delegated duties pursuant to governmental authority, suit against the private party would be tantamount to suit against the government itself. *See id.* ([g]overnment "impliedly promised to compensate" the party injured by the agent's actions.) Two exceptions to this general rule were noted by the Supreme Court in *Yearsley*. A party purporting to act on behalf of the government will be held liable for his actions causing injury to another: (1) if the agent exceeded his authority in performing the acts which caused injury or (2) if the authority conferred upon the agent was not validly conferred. *Yearsley*, 309 U.S. at 21, 60 S.Ct. at 414–15. In addition to these two exceptions, however, the Supreme Court noted in *Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471 (1943), that the government is not the "real party in interest" when a private corporation who performs governmental duties pursuant to contractual authority from the government is sued for negligence in the performance of these duties. *Brady*, 317 U.S. at 582–85, 63 S.Ct. at 429–30. As noted in *Sloan Shipyards Corp. v. United States Shipping Board Emergency Fleet Corp.*, 258 U.S. 549, 567, 42 S.Ct. 386, 388, 66 L.Ed. 762 (1922) "an instrumentality of government he might be and for the greatest ends, but the agent, because he is agent, does not cease to be answerable for his acts." Therefore, a private corporation performing governmental functions pursuant to contractually delegated authority will not be liable unless: (1) its action was beyond the authority delegated to it; (2) the authority was invalidly conferred; or (3) the harm was caused by the private party's own tortious conduct.

Applying these standards to a fiscal intermediary, whose duty is to determine the amount of payments to be made, make the payments and provide consulting and auditing services, 42 U.S.C. § 1395h, it becomes clear that a fiscal intermediary is a hybrid creature. At least one case has held that an employee of a fiscal intermediary is a federal official and therefore enjoys immunity from suit for intentional torts. *E.g. Bushman v. Seiler*, 755 F.2d 653, 655 (8th Cir.1985).

Other courts have applied general standards of sovereign immunity in barring suits against fiscal intermediaries that act "under the direction of the Secretary of Health, Education and Welfare," when there is no evidence that the intermediary acted outside the parameters of its delegated authority. *Matranga v. Travelers Ins. Co.*, 563 F.2d 677, 677–78 (5th Cir.1977); *accord Peterson v. Weinberger*, 508 F.2d 45, 50–52 (5th Cir.) *cert. denied Peterson v. Mathews*, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975) (federal employees were granted absolute immunity under the standard set out in *Barr v. Matteo*, as they exercised discretion in their official duties, but fiscal intermediary was granted sovereign immunity because it acted merely as an agent to the Secretary of Health, Education and Welfare and there was no evidence that it had acted wrongly); *see also Pine View Gardens, Inc. v. Mutual of Omaha Ins. Co.*, 485 F.2d 1073, 1074–75 (D.C.Cir.1973); *Anderson v. Occidental Life Ins. Co.*, 727 F.2d 855, 856–57 (9th Cir.1984). In these cases it was unnecessary for the court to determine whether the fiscal intermediary was a private party acting under contractually delegated authority or a federal employee acting with discretion because in none of these cases did the court find any evidence of wrongdoing.

Finally, at least one Court of Appeals has refused to grant immunity to a fiscal intermediary. In *Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006 (8th Cir. 1984), the Eighth Circuit held that a suit against a fiscal intermediary was not against the United States and refused to apply sovereign immunity. *Id.* at 1013 (citing *Brady v. Roosevelt Steamship Co.*, 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471 [1943] as "an analogous situation.") In that case, the trial court held that Travelers had committed the tort of fraud and was thereby

liable to the Hospital for $142,320. *Id.* at 1010. In rejecting Traveler's claim to immunity, the Eighth Circuit emphasized that the intermediary had committed a tort and had "exceeded the bounds of the authority conferred upon it by the government" and therefore sovereign immunity did not apply. *Id.* 1015–16. Similarly, in *Group Health, Inc. v. Blue Cross Assn.*, 625 F.Supp. 69, 70–79 (S.D.N.Y.1985), the district court denied Blue Cross' motion for summary judgment on the basis of sovereign immunity, finding that genuine issues of material fact existed concerning whether Blue Cross, a fiscal intermediary, had acted outside of the scope of its authority in allegedly making negligent misrepresentations.[8] Significantly, the court, citing *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21, 60 S.Ct. 413, 414, 84 L.Ed. 554 (1940), noted that the application of sovereign immunity to the actions of the fiscal intermediary was similar to the "government contractor defense" in which injuries are caused by the actions of a private party performing work on behalf of the government. *Group Health*, 625 F.Supp. at 74 n. 4.

As this case is before the Court on a motion to dismiss, it is unnecessary to determine with finality the precise nature of that hybrid creature, the fiscal intermediary. Whatever the approach finally justified by an evidentiary hearing, a party which acts beyond the authority delegated by the government is liable for its own actions and therefore may be sued in this Court. The complaint in this case alleges that "[i]f it is determined that duplicate of [sic] otherwise improper or inaccurate Medicare payments were made to Worcester City Hospital, then such payments were the result of the *unauthorized*

and negligent actions or omissions of Blue Cross." Answer, Counterclaim and Third-party Complaints of HCA Management Company, Inc. at 16 (emphasis added). Clearly the extent of the authority granted by the government and the terms of the contract will be necessary considerations in determining which theory of immunity may apply but, for purposes of this motion to dismiss, Management has alleged a cause of action pursuant to which it may prove facts which would entitle it to relief against Blue Cross. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988). At this early stage in the proceedings, Management has met the "minimal requirements" necessary to bring its "case safely into the next phase of the litigation," *id.*, and therefore Blue Cross' motion to dismiss the third-party complaint is DENIED.[9]

---

8. The district court in *Group Health* held that sovereign immunity would not apply to Blue Cross because "[t]he conduct complained of was not undertaken at the instigation and direction of the government." 625 F.Supp. at 78.

9. This Court must note that it has grave doubt whether—as to Blue Cross—there is in fact subject matter jurisdiction here. Management has not pled, and this Court is not aware, that the administrative review required under the Medicare Act has been exhausted. 42 U.S.C. secs. 1395ff, 1395oo, 405(g) and 405(h); *see also Marin v. HEW, Health Care Financing Agency,* 769 F.2d 590, 592 (9th Cir.1985) *cert. denied* 474 U.S. 1061, 106 S.Ct. 808, 88 L.Ed.2d 783 (1986); *Homewood Professional Care Center, Ltd. v. Heckler,* 764 F.2d 1242, 1248–50 (7th Cir.1985); *Bodimetric Health Services, Inc. v. Aetna Life & Casualty,* 706 F.Supp. 619, 625–26 (N.D.Ill.1989) *aff'd* 903 F.2d 480 (7th Cir.1990); *Group Health, Inc. v. Blue Cross Assn.,* 625 F.Supp. 69, 79–81 (S.D.N.Y.1985).