# Turner's Estate.

*Banks and banking—National banks—Power of national banks to act as fiduciaries—Acts of May 9, 1889, P. L. 159; May 21, 1919, P. L. 209, and May 20, 1921, P. L. 991—Acts of Congress of December 13, 1913, 38 Stat. 251, and Sept. 26, 1918, 40 Stat. 867.*

1. Where a national bank has been granted by the Federal Reserve Board the special permit provided by the Acts of Congress of December 13, 1913, 38 Stat. 251, and Sept. 26, 1918, 40 Stat. 867, to act as a fiduciary, and has complied with the Pennsylvania Acts of May 9, 1889, P. L. 159, and May 20, 1921, P. L. 991, and has consented to an examination of all the assets by the state bank examiners under the Act of May 21, 1919, P. L. 209, and has agreed to keep trust securities on deposit in a separate bank, it may act as a fiduciary in Pennsylvania.

2. If there is any inconsistency between the state acts and the federal acts, the former must yield to the latter.

3. It is not beyond the power of a national bank to agree to comply with state regulations as to fiduciaries where they are in conflict with federal practice.

4. Differences in administrative details between federal and state regulations, are not sufficient to deprive a national bank of its powers under the federal laws.

5. The establishment of the Federal Reserve Board was a matter within the scope of the federal power, and a state cannot, in anyway, interfere with the powers of such board, except in so far as Congress has permitted the states to do so.

6. The courts will assume that Congress, in enacting the Act of Sept. 26, 1918, 40 Stat. 867, was satisfied with the rules prescribed by the Federal Reserve Board. If these rules conflict with state regulations, the latter must yield to the former, because, the right being conceded, the power to regulate the exercise of the right would follow as a necessary incident.

Argued January 15, 1923. Appeals, Nos. 272-4, Jan. T., 1923, by the Commonwealth, from judgments of the Superior Court, Oct. T., 1922, Nos. 232-4, reversing decrees of O. C., Phila. Co., April T., 1922, Nos. 219 and 343, dismissing petition of Corn Exchange National Bank for approval as fiduciary, and dismissing exceptions to adjudication of estates of Edna Frisbie Turner and Dudley B. Turner. Before FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Appeals from Superior Court. See 80 Pa. Superior Ct. 88, and 30 Pa. Dist. R. 603, in the court below.

The opinion of the Supreme Court states the facts.

Decrees reversed. The Commonwealth appealed.

*Error assigned,* inter alia, was judgment, quoting it.

*Frank Taylor Pusey,* Deputy Attorney General, with him *Geo. E. Alter,* Attorney General, for appellant:—Appointment of a national bank as a fiduciary is in contravention of the laws of Pennsylvania: First Nat. Bank v. Trust Co., 244 U. S. 416.

*Owen J. Roberts,* with him *C. Alison Scully,* for appellee.—Congressional action, within its constitutional sphere, is paramount, and state law or state policy must give way to it: McCulloch v. Maryland, 4 Wheat. 315; Osborn v. Bank, 9 Wheat. 738; Farmers' Bank v. Dearing, 91 U. S. 29; Davis v. Bank, 161 U. S. 275; Easton v. Iowa, 188 U. S. 220; Van Reed v. Bank, 198 U. S. 554.

OPINION BY MR. JUSTICE FRAZER, April 9, 1923:

These three appeals involve the same question, namely, whether a national bank has the right to act as a fiduciary under the laws of Pennsylvania; they were argued together and will be decided in a single opinion.

In settling the account of executors of the estate of Edna F. Turner, a fund was awarded to minor children, beneficiaries under the will of decedent. The court appointed the Rittenhouse Trust Company, of the City of Philadelphia, guardian of their estate and before the account was called for audit that company was converted into a national bank and consolidated with the Corn Exchange National Bank, with power granted by the Federal Reserve Board to transact a fiduciary business. The latter bank applied for and secured a certificate from the state banking department authorizing it to do a fiduciary business in Pennsylvania and presented a petition asking that funds belonging to the minors be paid to it. This the court refused to do until the bank secured the approval of the Orphans' Court of Philadelphia County, under Rule 21 of that court relating to approval of fiduciaries. Accordingly, a petition was presented for that purpose, setting forth the fact of petitioner's incorporation under the national banking laws and its subsequent consolidation with the Rittenhouse National Bank, formerly Rittenhouse Trust Company, stating it was authorized by the Federal Reserve Board to transact a fiduciary business and had complied with the laws of Pennsylvania governing the transaction of such business; had conformed with the Acts of May 9, 1889, P. L. 159, and May 20, 1921, P. L. 991, agreeing to be subject to supervision and examination by the banking department of Pennsylvania in the same manner as corporations of Pennsylvania; and stipulated, pursuant to requirements of the before-mentioned rule of court, that "securities and other property received by the corporation both in a fiduciary capacity and from the person or persons for whom it is surety, shall not be taken out of the jurisdiction of the court and shall be

kept separate and apart from all moneys, securities and property of the said bank, so that the same can, at all times, be easily identified as belonging to the estate of the person for whose account the same has been received, and that trust funds received by said bank, either as fiduciary or for the person or persons for whom it is surety shall be deposited in a separate account" in another bank or trust company of good standing. This application was refused by the orphans' court, whereupon the bank filed a petition, as guardian of the minors, asking that, notwithstanding the refusal to approve its application to act as fiduciary, the funds in question be awarded to it as guardian. This petition was also dismissed and an appeal taken to the Superior Court, which reversed the court below, and from that decree we have the present appeals.

The Act of Congress, approved December 13, 1913, 38 Statutes, 251, gave the Federal Reserve Board power, inter alia, "to grant by special permit to national banks applying therefor, when not in contravention of state or local law, the right to act as trustee, executor, administrator or registrar of stocks and bonds under such rules and regulations as the said board may prescribe." It was thus left to the courts to ascertain whether, in any given case, the exercise of the powers granted would be in contravention of state or local law. Difficulties arose in the construction of the act, resulting in its amendment in 1918 (Act September 26, 1918, 40 Statutes 867) by permitting national banks to act as executor, administrator, trustee, guardian, etc., in all cases where state banks, trust companies, or other corporations "which come into competition with national banks, are permitted to act under the laws of the state in which the national bank is located," and also providing that "whenever the laws of such state authorize or permit the exercise of any or all of the foregoing powers by state banks, trust companies or other corporations which compete with national banks, the granting to and the exercise of such powers by

national banks shall not be deemed to be in contravention of state or local law within the meaning of this act." The statute contains a further provision that banks exercising fiduciary powers shall "segregate all assets held in any fiduciary capacity from the general assets of the bank and shall keep a separate set of books and records showing in proper detail all transactions engaged in under authority of this section......but nothing in this act shall be construed as authorizing the state authorities to examine the books, records and accounts of the national bank which are not held in trust under authority of this sub-section." It also required that "funds deposited or held in trust by the bank awaiting investment shall be carried in a separate account and shall not be used by the bank in the conduct of its business, unless it shall first set aside, in its trust department, United States bonds or other securities approved by the Federal Reserve Board." Numerous other administrative provisions are found in the federal act that need not be referred to here.

The contention of the Commonwealth is that, to permit a federal bank to act in a fiduciary capacity in this State, under the statutory provisions mentioned, would amount to a violation of our laws. The Act of May 21, 1919, P. L. 209, provides, inter alia, that the banking department shall have supervision of all corporations or persons receiving money on deposit for safe keeping, including banks incorporated under the laws of the United States, which shall, pursuant to federal law or regulations, be permitted to act in any fiduciary capacity and makes all such corporations subject to inspection and examination by the banking commissioner. By Act of May 20, 1921, P. L. 991, it was provided that no person should have the right to appoint, in a fiduciary capacity, any corporation other than a corporation organized and doing business under the laws of Pennsylvania and subject to the supervision and examination of the banking department of the State, or a corporation organized under the laws of the

United States and doing business in Pennsylvania by resolution of its board of directors agreeing to place itself under and subject to the supervision and examination of the State Banking Department "in the same manner and to the same extent as corporations organized and existing under the laws of this State."

A comparison of the foregoing federal and state acts shows the main points of difference is that the federal statute allows inspection of the books and records of only that part of the assets of national banks as are received in a fiduciary capacity and requires them to segregate all assets held in a fiduciary capacity and prohibits commingling them with other assets in its business, unless it shall first set aside in the trust department United States bonds or other securities approved by the Federal Reserve Board, while, on the other hand, the state acts authorize supervision by the banking department of all the assets of the corporation and forbids substitution of securities for the funds but requires the companies, in all cases, to keep trust funds separate from its other assets and to indicate all investments made as fiduciaries, so that the trust to which the investment belongs shall be clearly known. It is argued this difference in the two provisions produces a conflict, making the Federal Reserve Act in direct violation of the state law by permitting uninvested funds to be mingled with the general assets and removing such funds from inspection or supervision of state authorities. The Corn Exchange National Bank has complied with every provision of the state rules, regulations and laws, by consenting to the examination of all its assets by the state bank examiners and agreeing to keep trust securities on deposit in a separate bank. This voluntary compliance with state rules would, in itself, seem to render unnecessary a further discussion of the question raised. Appellant contends, however, that the national bank cannot validly agree to be bound by state law or by local rule of court, which is contrary or inconsistent with the federal law and that, consequently,

the question remains whether it was not beyond the power of the bank to agree to comply with state regulations where they are in conflict with federal practice.

The answer to this contention is that, in so far as the state law is inconsistent with the Federal Act, the former must yield to the latter, even though the result may be to place upon federal banks a benefit or burden not received or assumed by the state banks and trust companies.

The definition given in the Federal Act as to what constitutes a violation of the state law takes no cognizance of the fact that certain administrative details in the regulations of federal banks were different from those governing state institutions. The existence of these differences, however, is not sufficient to deprive a national bank of the enjoyment of its powers under the federal law. The establishment of the Federal Reserve Bank was a matter within the scope of federal power and a state cannot, in any way, interfere with the powers of such bank, except in so far as Congress has permitted it to do so. When the Federal Act was passed Congress had knowledge of the fact that various states had adopted different laws and systems governing persons or corporations acting in a fiduciary capacity. Having this knowledge, Congress gave the Federal Reserve Board power to prescribe regulations for the government of federal banks. Regulations thus established are paramount to state rules and the latter must yield whenever a conflict arises. It was with knowledge of this situation and the existing difference between rules governing state and federal banks that Congress undertook to define, by the Act of 1918, what would be considered "in contravention of state law." It will be observed the definition refers to "powers" only and not the rules governing the exercise of such powers. It is the right itself, not the rules governing the exercise of the right, to which reference is made. Concede the existence of the right in the state banks and trust companies and we have the same right bestowed upon national banks. Had Con-

gress intended the latter to be governed by state laws, in the exercise of the right given, surely expression of that intention would be found in the statute. In absence of such utterance, we must assume Congress was satisfied with the rules already prescribed by the Federal Reserve Board. If these rules happen to conflict with state regulations on the subject, the latter must yield to the former, because, the right being conceded, the power to regulate the exercise of the right would follow as a necessary incident. We believe this view is fully supported by the opinion in First National Bank v. Union Trust Co., 244 U. S. 416, and cases therein cited.

The decrees of the Superior Court are affirmed.