## ELSON v. MORTGAGE BLDG. & LOAN ASS'N.

### No. 7535.

District Court, E. D. Pennsylvania.

June 17, 1933.

Harold D. Saylor, Deputy Atty. Gen., for the rule.

Gordon A. Block, of Philadelphia, Pa. (Grover C. Ladner and Joseph H. Sundheim, both of Philadelphia, Pa., of counsel), opposed.

WELSH, District Judge.

In this matter the Attorney General in the name of the commonwealth of Pennsylvania filed a petition on which this court granted an order on its receivers to show cause why the petitioner should not be granted leave to intervene and why an order should not be made directing the receivers to turn over to the secretary of banking of the state of Pennsylvania all assets and records of the Mortgage Building & Loan Association. To this petition an answer was filed and the cause set down for argument on petition and answer. From the record, the petition, and answer, the following material facts appear:

Edwin B. Elson, plaintiff, is a citizen of the state of New York. He is a stockholder of the Mortgage Building & Loan Association,

hereinafter for brevity referred to as defendant. By bill in equity containing adequate averments as to jurisdiction as well as sufficient grounds (see Flersheim et al. v. Natl. Radiator Co., 64 F.(2d) 847 [C. C. A. 3, 1933]), and confessing answer admitting facts, this court appointed John G. Williams and Joseph B. Simon, receivers, and later added Charles Denby, Jr. No question has been raised as to the regularity of the appointment.

Among the reasons averred in the bill and strongly urged upon the court for its action in appointing a receiver was the fact that the defendant had been organized by a merger of seven organizations; that a nonconsenting stockholder of one of the constituent associations comprising this merger, to wit, the Nice Ball Bearing Company, had obtained a judgment of $40,044, and was threatening to issue execution against the defendant, levy upon, seize, and apply its assets to the collection of its judgment to the exclusion of other creditors whose claims did not arise out of a former status of stockholder, as well as other nonassenting stockholders of the same class, whose rights were in parity with that of the Nice Ball Bearing Company (see Stone v. Schiller B. & L. Ass'n, 302 Pa. 544, 553, 153 A. 758; Weinroth v. Homer B. & L. Ass'n, 310 Pa. 265, 165 A. 28); and that appointment of a receiver was necessary to properly conserve the assets and prevent such stockholder from obtaining preference over others of the same class.

Pursuant to said bill and answer, receivers were appointed on the 9th day of February, 1933. Thereafter on February 14, 1933, the secretary of banking sent a notice to the officers of the association and to the receivers to appear at a hearing before him, to show cause why possession should not be taken of the defendant's business and property, because it was "insolvent and in an unsafe and unsound condition to continue business and in the hands of receivers." The receivers respectfully declined to attend, and made known their position to the effect that having been appointed by a court of competent jurisdiction and in possession of the assets, the court of their appointment, having first taken jurisdiction, must now be regarded as having exclusive jurisdiction.

On February 17, 1933, after hearing, the secretary of banking filed what is called a "Certificate of Possession" in court of common pleas No. 5 of Philadelphia county, in which Richard Ennis was designated by the secretary of banking, special deputy to take charge of defendant's business and property. On March 1, 1933, due demand was made on the receivers of this court by said special deputy to turn over the assets and records of the defendant, which demand was refused, and on March 27, 1933, the petition now before the court was filed.

Before discussing the questions raised by the Deputy Attorney General in support of the petition, it should be preliminarily observed that the filing of this petition in the name of the commonwealth of Pennsylvania is hardly a proper practice, in that the state of Pennsylvania is not a proper party to this proceeding, for in its sovereign capacity it has no interest in these proceedings. Its attempted intervention, therefore, makes the case no stronger than if a receiver of a state court had filed the petition. The correct practice would seem to require that Richard Ennis, special deputy secretary of banking appointed by the secretary to take possession of the defendant, should be the petitioner as in the case of O'Neil v. Welch (C. C. A.) 245 F. 261. However, since no objection has been raised on this score, the court will treat the petition as though filed by the deputy secretary of banking.

If the Court understands the Deputy Attorney General's argument, he urges in support of his petition the following propositions:

1. The federal courts have no jurisdiction to appoint receivers for building and loan associations.

2. That the proceedings taken by the secretary of banking must be held to relate back to a meeting called by him of the officers and directors prior to June, 1931, as a result of which the association was permitted to continue business on what was termed a restricted basis, as a consequence of which the proceedings in the state court, if so related back, become first in point of time.

3. In any event, by virtue of a provision in the state statute any receiver appointed by any court, state or federal, must be held to be superseded whenever the secretary of banking asks.

The court cannot agree to any of these propositions, which will now be considered in order.

■ 1. Have the federal courts jurisdiction to appoint receivers for building and loan associations? The appointment of receivers in equity in proper cases for corporations is but a branch of the equity jurisdiction of this court, and in absence of an act of Congress

specifically exempting building and loan associations from such jurisdiction, it is hard to see upon what ground the assertion of lack of jurisdiction can logically rest. No extensive review of pertinent-authorities should be necessary in view of the clear and convincing opinion of Judge Woolley of our Circuit Court of Appeals in the case of O'Neil v. Welch, 245 F. 261, 265 (C. C. A. 3, 1917), where in setting aside the appointment of a receiver of an insurance company at the instance of the insurance commissioner of Pennsylvania, because the doctrine of comity required the federal courts to refuse to take jurisdiction after proceedings had first been begun in the state court, it was said:

. "It cannot be doubted that the Federal court, in the exercise of its general equity jurisdiction, has power to appoint a receiver on a stockholder's bill, determine a corporation's solvency and distribute its assets, and that no State statute can impair or destroy that power. It is equally clear that the State court has power, in the exercise of its special jurisdiction, to determine on the Attorney General's suggestion the solvency of an insurance corporation, deliver its property to an officer with the function of a receiver, and distribute its assets; and that there is no Federal statute which impairs or destroys that power. Therefore, in considering the one question of priority of jurisdiction, we assume that the Federal and State courts named have concurrent jurisdiction in the appointment of receivers and in administering the affairs of insolvent corporations, though invoked and proceeded with in different ways.

"While the two courts have concurrent jurisdiction in the sense that each has the same jurisdiction, it is the policy of the law that the jurisdiction of both shall not be concurrently invoked and exercised; hence it is a well settled rule that as between two courts having concurrent jurisdiction of the subject of an action, the court which first obtains jurisdiction has the right to proceed to its final determination without interference from the other. Pitt v. Rodgers, 104 F. 387, 389, 43 C. C. A. 600. In our mixed system of State and Federal jurisprudence, such a rule is found not only desirable but necessary. It was therefore early held (Taylor v. Taintor, 16 Wall. 366, 21 L. Ed. 287), that: 'Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other until its duty is fully performed and the jurisdiction invoked is exhausted; and this rule applies alike in both civil and criminal

cases. It is indeed a principle of universal jurisprudence that where jurisdiction has attached to a person or thing, it is (unless there is some provision to the contrary) exclusive in effect until it has wrought its function.' *When, therefore, we find which court first obtained jurisdiction of this controversy, we have answered the question as to which should retain it."* The italics are ours.

In the O'Neil v. Welch Case, the Circuit Court of Appeals then found that the state court had first obtained jurisdiction by reason of the fact that the petition for an order to show cause why the insurance commissioner should not take possession was first filed in that court by the Attorney General, and consequently set aside the appointment of receivers by the District Court which was made subsequently.

That is not true in the instant case. As will be hereinafter pointed out, it is clear that proceedings were first begun in this court and not in the state court, and since a proper observance of the doctrine of comity required the court in the O'Neil Case to decline jurisdiction because the jurisdiction of the state court was first invoked, so here the state court should reciprocally decline jurisdiction by reason of the jurisdiction having been here first invoked. See also, for the same general principle involved, Ward v. Foulkrod, 264 F. 627, 629 (C. C. A. 3).

These decisions of our Circuit Court of Appeals above quoted from are amply supported by decisions of the United States Supreme Court, among which is Leadville Coal Co. v. McCreery, 141 U. S. 475, 12 S. Ct. 28, 25 L. Ed. 824, in which the same principle was involved as is here involved. In that case a bill in equity was filed in the United States Circuit Court upon which a receiver was appointed who took possession of the assets. Three years later a decree was entered ascertaining claims of creditors and directing a sale of the property. After this decree, the state court of Ohio, by decree in accordance with its statutes, dissolved the corporation and appointed a receiver, charged with the statutory duties of holding, managing, and disposing of all the corporation's assets and distributing them among creditors.

Thereafter, the property was sold in accordance with the decree of the federal court; a master's report was filed confirming the sale, and thereupon certain stockholders and creditors appealed. It was argued that the federal court should have gone no further, and should have turned the property over to the state receiver for distribution under the

state statute because of the dissolution decree, since that was, in effect, it was contended, the death of the corporation, and therefore all subsequent proceedings in connection with the distribution of the assets vested in the state court which had created the corporation. In the course of its opinion the Supreme Court, speaking through Mr. Justice Brewer, said: "It is worthy of notice that the case in which the decree of dissolution was entered was not commenced till long after this suit was begun and the receiver had taken possession of the property; that the receiver thus appointed by the state court does not himself come into this court and ask possession of this property; and also that the state court, in its decree of dissolution, expressly recognized the possession of the United States court. * * * But we do not care to rest our conclusion on these circumstances. The circuit court takes its jurisdiction, not from the state of Ohio, but from the United States; and the extent of its jurisdiction is not determined by the laws of the state, but by those of the United States. Doubtless, while sitting in the state as a court of the United States, it accepts and gives effect to the laws of the state so far as they do not affect its jurisdiction and the rights of nonresident creditors. It nevertheless exercises powers independent of the laws of the state; and when, in pursuance of the jurisdiction conferred by the laws of the United States, it takes possession of the property of a defendant and proceeds to final decree, determining the rights of all parties to that property, its decree is not superseded and its jurisdiction ended by reason of subsequent proceedings in the courts of the state, looking to an administration of that property in accordance with the laws of the state. * * *"

See, also, Harkin v. Brundage, 276 U. S. 36, 43, 48 S. Ct. 268, 72 L. Ed. 457.

Finally upon this point it may be said that it is no unusual thing for federal courts to appoint receivers for building and loan associations, and wherever challenged the jurisdiction of the federal court when first invoked seems to have been upheld. See the following cases, all of which are building and loan association cases: Towle v. American Bldg., Loan & Inv. Soc., 60 F. 131 (C. C. Ill.); Sleeper v. Winkel, 122 F. 736 (C. C. E. D. Pa. 1903, Judge McPherson); American B., L. & Investment Soc. (appointed on stockholder's bill), Towle v. American Building, Loan & Investment Soc., supra; Cumberland B. & L. Ass'n (on stockholder's bill), Wilson v. Parvin, 119 F. 652 (C. C. A. 6, 1903, Judge

Lurton); Interstate B. & L. Ass'n (on stockholder's bill, primary receiver appointed in C. C. N. D. Ga. 1900), Flinn v. Interstate B. & L. Ass'n, 141 F. 672 (C. C. S. C. 1905); Universal Savings & Trust Co. (on stockholder's bill), Universal Savings & Trust Co. v. Stoneburner, 113 F. 251 (C. C. A. 4, 1902); Blue Grass B. & L. Ass'n (appointed pendente lite on stockholder's bill), Powers v. Blue Grass Bldg. & Loan Ass'n, 86 F. 705 (C. C. Ky. 1898, Judge Lurton); Douglass v. Kavanaugh (name of B. & L. is not revealed in this case but the receiver had been appointed earlier in the same court on a stockholder's bill) 90 F. 373 (C. C. A. 6); Columbia Mutual Building & Loan Ass'n (receivers actually appointed in Federal court in March, 1902), Miers v. Columbia Mutual Building & Loan Ass'n, 157 F. 940 (C. C. S. D. of N. Y. 1907); Baltimore B. & L. Ass'n of Baltimore City (primary receiver had been appointed by this court 1900), Coltrane v. Baltimore B. & L. Ass'n of Baltimore City, 110 F. 272 (C. C. Md. 1901); National Home B. & L. Ass'n (primary receiver appointed in Southern District of Illinois), McMurray v. Gosney, ancillary receiver, in W. D. of Pa., 106 F. 11 (C. C. W. D. Pa. 1901); New South B. & L. Ass'n, Miles v. New South B. & L. Ass'n, 111 F. 946 (C. C. E. D. La. 1900); Southern Home B. & L. Ass'n, Alexander v. Southern Home B. & L. Ass'n, 110 F. 267 (C. C. Ga. 1900); Fidelity Trust & Loan Company (receiver had not been appointed), Manorita v. Fidelity Trust & Loan Co., 101 F. 8 (C. C. S. D. Ala. 1900); Michigan Savings & Loan Ass'n (appointed in 1901 by E. D. of Mich.), Galloway v. Mich. Savings & Loan Ass'n, 206 F. 241 (C. C. A. 6, 1913); Southern B. & L. Ass'n (primary receiver in N. D. Ala.), Cooper v. Newton, 160 F. 190 (C. C. Ga. 1908); American B. & L. Ass'n (receiver had been appointed), Solomons v. American B. & L. Ass'n, 116 F. 676 (C. C. N. D. Ga. 1902).

In this connection, also, the case of Turner's Estate, 277 Pa. 110, 120 A. 701, might be read with profit, wherein it is clearly recognized by the Supreme Court that no state statute can limit the scope of an act of Congress within its constitutional sphere. Jurisdiction of controversies between citizens of different states is undoubtedly a proper constitutional sphere of congressional action, which is so paramount that both state laws and state policy must give way to it.

2. Next it is argued by the Deputy Attorney General that because the secretary of banking issued certain orders to the corporation prior to June 5, 1931, the state proceed-

ings must be held to relate back to that date, the effect of which would be to establish priority in the state court. In order to fully consider this question, it becomes important to review the statute of the state of Pennsylvania which governs the proceedings of the state court. The pertinent state statute is the Banking Act of 1923 (P. L. 809), as amended by the Act of May 5, 1927, P. L. 762 (7 PS § 1 et seq.), which provides general rules and regulations for the department of banking of Pennsylvania. The Banking Act of 1923 is virtually a re-enactment of the Banking Act of 1919 (P. L. 209), which is a codification prepared by the commissioners appointed in 1917 to codify and revise the state banking laws. As indicated in the report of the commissioners, one of the changes made in the banking department was to constitute the commissioner of banking, as he was then termed, ex officio receiver of all of the state courts, and to provide a convenient and expeditious procedure whereby he could act as such ex officio receiver.

Accordingly, section 21 of the act of 1923 (7 PS § 21) provides as follows:

"The secretary may, after hearing had upon notice given, with the approval and consent of the Attorney General, take possession of the business and property of any corporation or person subject to the supervision of the department, whenever it shall appear to him that such corporation or person:

"I. Has violated any law regulating its or his business, and has persisted in such violation in disregard of an order duly made by the secretary;

"II. Is conducting business in an unauthorized or unsafe manner and has persisted in disregard of an order duly made by the secretary;

"III. Is in an unsafe or unsound condition to continue business; Provided, in such case, That the secretary may forthwith, without such hearing and consent of the Attorney General, take possession of the business and property of any such corporation or person receiving moneys on deposit, when and if, in his opinion the protection of depositors and the public requires such peremptory action;

"IV. Has an impairment of capital, which has not been restored or made good within the time fixed by order of the secretary;

"V. Has suspended payment of obligations;

"VI. Has neglected or refused to comply with the terms of any lawfully issued order of the secretary;

"VII. Has refused, upon proper demand, to submit the records and affairs of the business to the secretary, a deputy, or any duly authorized examiner or agent of the department;

"VIII. Has refused to be examined upon oath or affirmation, regarding such affairs;

"IX. Is in the hands of a receiver appointed by any court, or in any bankruptcy proceeding, or of an assignee or trustee for creditors appointed by such corporation or person."

It will be observed that clauses 2 and 6 are inserted to give the secretary of banking power to enforce any lawful order which he may impose on any institution under his supervision. It is reasonably clear, therefore, from the reading of this section that it was the intention of the Legislature to give the secretary of banking the right to require the discontinuance of unsafe and dangerous practices which might lead to disaster without requiring him to actually take possession of the corporation and wind it up as ex officio receiver. In other words, he is given in a sense a preliminary discretion to issue orders for the safeguarding of institutions under his supervision without proceeding to the drastic step of taking possession and winding them up.

It is clear, therefore, to the court that when the secretary of banking summoned the officers of the defendant building and loan association to appear before him on Friday, June 5, 1931, it was in no sense a hearing to show cause why he should not, with the approval and consent of the Attorney General, take possession of the business and property of the defendant. On the contrary, his letter establishes that in his judgment such drastic action was not at all necessary and his letter of June 5, 1931, cannot be interpreted otherwise than as certain orders to the officers of the association to conduct their business in a certain manner. Presumably, they did so, for the officers of the association remained in possession of said association and conducted its affairs until the appointment of the equity receivers by this court in February, 1933.

The action taken by the secretary in 1931 was at the most a mere admonition. It did not even rise to the dignity of a restraining order, and it has been held in East Tennessee, etc., R. Co. v. Atlanta, etc., R. Co. (C. C.) 49 F. 608, 611, 15 L. R. A. 109, that a restraining order issued by a state court is not the

784

equivalent to the commencement of an action for the appointment of a receiver; the court in that case saying: "It is insisted, however, that the superior court of the state had taken control of the property, because, upon an amendment to the bill therein pending, alleging that the officers were permitting a use of the corporation funds for private purposes, it had granted a restraining order enjoining the officers of the road from permitting the use of its funds for other than the purposes of the corporation. This, however, was nothing more than an order to restrain actual or threatened malfeasance of an officer or officers of the corporation, and was in no sense a seizure of the property itself. It indeed was a distinct recognition of the fact that the officers were yet in control. Otherwise, no injunction would have been issued against them."

Finally, the fact that neither the secretary of banking nor the Attorney General regarded the hearing held June 5, 1931, in any sense as a commencement of possession proceedings by his department, would seem to be almost conclusively established by the fact that when the secretary of banking finally did determine to move for possession of the defendant, he instituted entirely new proceedings by notifying defendant's officers and directors and the receivers to appear before him at a hearing to be held on Friday, February 17th, at the Philadelphia office of the secretary of banking to show cause why possession should not be taken of defendant's business and property because it was insolvent, in an unsafe and unsound condition to continue business, and in the hands of receivers.

The best that can be said from the viewpoint of the petitioner is that his proceedings cannot in any event be held to relate back to a date prior to February 14, 1933. That date is subsequent to the date on which the federal court receivers were appointed. In thus commenting, the court does not mean to rule that the mere issuing of a notice by the secretary of banking to show cause why possession of an institution subject to his supervision should not be taken, is equivalent to the commencement of court proceedings and therefore the date upon which the question of priority of proceedings rests. The decision of that question is unnecessary in this case, for even that date is subsequent to the filing of the bill.

■■ 3. Finally, it is urged upon us by the Deputy Attorney General that we are bound by section 22 of the act (7 PS § 22), which provides that the secretary, after filing his certificate of possession, shall supersede a receiver appointed by any court. The pertinent portions of section 22 of the act of 1923 read as follows:

"When the secretary shall have duly taken possession of the business and property of a corporation or person as provided in section twenty-one of this act, he shall forthwith make, under his hand and official seal, a certificate setting forth that he has so taken possession, and shall file such certificate in his office, and cause a certified copy thereof to be filed in the office of the prothonotary, who shall index the same in the judgment index under the name of the corporation or person as defendant and the name of the secretary as plaintiff.

"From and after the filing of such certified copy in the office of the prothonotary, the secretary shall supersede any receiver previously appointed by any court for, or any assignee or trustee for creditors appointed by, such corporation or person.

"Such superseded receiver, assignee, or trustee shall forthwith file his account in the court having jurisdiction thereof, and pay over and deliver to the secretary all moneys, securities, assets, and property of such corporation or person in his custody, possession, or control. Said court shall allow credit for expenses and for the disbursements properly incurred or made prior to the taking possession by the secretary, and shall allow proper compensation to said receiver, assignee, or trustee, and his counsel, which, when determined, shall be paid out of the funds of said corporation or person in the hands of the secretary."

This court does not believe that the term "any Receiver by any court" can be fairly interpreted to apply to the federal court, because it is to be noted that the word "court" as used in the act, following the modern method of drafting acts, is defined in section 2 of the act (7 PS § 2) covering general definitions to mean the court of common pleas (i. e., the state court). Consequently, when section 22 uses the word "court," it means common pleas court. Such interpretation is fortified by reference to the annotations of the commissioners who codified and revised the laws in their report of the Banking Department Act, which was enacted and became the Banking Department Act of 1919 (Act of May 21, 1919, P. L. 209).

From this annotation it appears that the second and third paragraphs of this section were from the prior Act of April 23, 1909, P. L. 167. Reference to such act discloses that

it reads the same as the second paragraph of section 22 with the exception of using the words "Court of this Commonwealth" instead of "court." It is clear, therefore, that the words "Common Pleas" were omitted by the commissioners who drafted the Banking Department Code of 1919 in the interest of brevity, they having already defined the meaning of the word "court" to be "Court of Common Pleas." But whether this be the correct interpretation of the term "court" as used in section 22, it is clear that the Legislature has no power to limit the jurisdiction of the federal courts, for that is the exclusive prerogative of Congress and of Congress alone. Leadville Coal Co. v. McCreery, 141 U. S. 475, 12 S. Ct. 28, 35 L. Ed. 824, supra.

From time to time by various devices and in various manners the Legislatures of some of the states have endeavored to limit or curtail the jurisdiction of the federal courts, but such encroachment is not permitted either by the United States Supreme Court authorities or those of the Circuit Court of Appeals. Illustrative cases are Lappe v. Wilcox (D. C.) 14 F. (2d) 861, 864, where it was held the state statute compelling arbitration between two parties and directing stay of proceedings could not be made binding upon federal courts, the court saying: "It is the duty of the federal courts to exercise their powers in every case to which their jurisdiction extends. Hyde v. Stone [20 How. 170, 15 L. Ed. 874], supra; Kline v. Burke Construction Co., 260 U. S. 226, 234, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077," and the reason therefor being well stated in the following language: "But statutes of the state of New York cannot affect nonresidents of the state, who have the right, denied to inhabitants of the state, to invoke the jurisdiction of the federal court. From early times it has been consistently held that state statutes which have the effect of impairing the rights and remedies of nonresident suitors entitled to resort to the federal courts for redress are invalid and ineffective as to such nonresident suitors." See, also, Farrell v. Stoddard, Supt. of Insurance of New York (D. C.) 1 F. (2d) 802, in which it was expressly held that the statute, even if it intended to supersede existing equitable and common-law rights of the federal courts, could not do so where the jurisdiction of the court is invoked by a nonresident. See, also, Morrill v. American Reserve Bond Co. (C. C.) 151 F. 307; Allen, Bank Commissioner, v. U. S., 285 F. 678 (C. C. A.); Leadville Coal Co. v. McCreery, 141 U. S. 475, 12 S. Ct. 28, 35 L. Ed.

824; and see, also, Turner's Estate, 277 Pa. 110, 120 A. 701.

In concluding the court deems it not amiss to answer the suggestion of the Deputy Attorney General in his argument that on the broad grounds of public policy the federal courts should exercise a wise discretion and refuse jurisdiction in cases relating to corporations under the supervision of a state department. Without entering into a discussion of whether so doing would be or would not be a wise exercise of discretion, it is sufficient to say that the federal court has no such discretion in the matter. It has no *right* to refuse to take jurisdiction in a proper case where a nonresident plaintiff within his legal rights invokes the jurisdiction of the court. To hold otherwise would be to strip a nonresident plaintiff of every vestige of his rights under the Constitution and make him subject entirely to the political, economic, and financial policies of the state in which the defendant might reside. Such a theory, if carried to its logical conclusion, would destroy the union of the states and make our nation consist, eventually, of 48 states bristling with antagonisms, conflicting policies, and jealousies. The public policy underlying the principles in this case referred to by the Deputy Attorney General cannot be construed in such a provincial manner. The Supreme Court has stated so most emphatically in the case of Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 S. Ct. 192, 195, 53 L. Ed. 382, 48 L. R. A. (N. S.) 1134, 15 Ann. Cas. 1034, where Mr. Justice Peckam said: "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction (Cohens v. Virginia, 6 Wheat. 264, 404, 5 L. Ed. 257, 291), and, in taking it, that court cannot be truthfully spoken of as precipitate in its conduct. That the case may be one of local interest only is entirely immaterial, so long as the parties are citizens of different states or a question is involved which, by law, brings the case within the jurisdiction of the Federal court. *The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied.* Re Metropolitan Ry. Receivership, 208 U. S. 90–110, 28 S. Ct. 219, 52 L. Ed. 403–412."

In this case there is no suggestion that Mr. Elson, the plaintiff, is not a bona fide nonresident of the state of Pennsylvania, nor is there the slightest doubt that he was amply justified in invoking the jurisdiction of this court in view of the fact that there was rea-

sonable ground for fear that a stockholder of similar class was not only in the position to, but was actually taking steps to, proceed on a judgment which would result in a preference to the detriment of not only the plaintiff but of other stockholders similarly situated, and, indeed, of general creditors, whose prior rights by the law of the state of Pennsylvania are beyond question.

While, of course, like others in interest, he might have requested the secretary of banking to act rather than to have filed a bill in the federal court, the fact is that he was not bound to do so. He had a right to invoke the jurisdiction of this court, a right which could not be denied to him.

Upon consideration of the whole record, we are of the opinion that no sufficient grounds have been shown to vacate the court's appointment of the receivership, and since this is the only purpose for which the petition to intervene has been filed, the petition filed by the Attorney General is dismissed.

Let an appropriate decree be prepared.