# In re The National Bank of Fayette County

*Bane & Bane* and *M. Bowman McDonald*, for receiver.

*Higbee, Lewellyn & Higbee*, for trustee.

MATTHEWS, P. J., O. C., specially presiding, January 27, 1943.—The questions here involved arise from exceptions to accounts, as stated by the receiver of an in-

solvent National bank, of the administration of various mortgages held by the bank as fiduciary. . . .

The trustee appointed by this court to liquidate the mortgages set forth in the bill or petition has filed the following exceptions to the accounts as stated by the receiver:

"1. Accountant negligently administered each of the mortgages for which separate accounts have been filed in that

"(a) Accountant failed and neglected to collect interest on the mortgage indebtedness;

"(b) Accountant failed and neglected to collect the indebtedness at its maturity;

"(c) Accountant failed to collect the indebtedness until the mortgage security has depreciated to a value insufficient to pay it;

"(d) Accountant failed to pay or require the mortgagor to pay taxes assessed against the mortgaged premises after they became due and payable;

"(e) Accountant failed to take possession of the mortgaged premises and collect or attach the rental therefrom.

"2. Accountant has failed to account for all monies obtained and received in and about its administration of the respective mortgage indebtedness.

"3. Accountant failed to procure the appointment of a successor fiduciary or trustee for the purpose of collecting the mortgage indebtedness until such time as great losses had accrued."

All these exceptions are in general terms and are intended to raise the question of the rights, powers, and duties of a receiver of an insolvent National bank with respect to trust estates.

The foundation of the power and authority of National banks to act as fiduciaries is the Federal Reserve Act of December 23, 1913, 38 Stat. at L. 251, at 262, wherein and whereby the Federal Reserve Board therein created was authorized and empowered under

section 11 (*k*) "To grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, executor, administrator, or registrar of stocks and bonds under such rules and regulations as the said board may prescribe." Difficulties arose in the construction and administration of this act, and it was amended and reenacted by section 2 of the Act of September 26, 1918, 40 Stat. at L. 967, so that the above-quoted section reads, in part, as follows:

"To grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located."

There was also added by the amendment of 1918 and by further amendments of June 26, 1930, 46 Stat. at L. 814, and August 23, 1935, 49 Stat. at L. 684, 12 U. S. C. §248 (*k*), a number of provisions in regard to the administration of trust estates, but no reference is made to the procedure when the bank becomes insolvent. The constitutionality of this paragraph of the Federal Reserve Act has been settled: First National Bank of Bay City v. Fellows, etc., et al., 244 U. S. 416, 61 L. Ed. 1233; Turner's Estate, 277 Pa. 110; and is not raised in this proceeding.

Pursuant to the authority granted by the Federal Reserve Act, as amended, the Federal Reserve Board has, from time to time, promulgated certain rules and regulations, and regulation F, series of 1928, with reference to trust powers of National banks, provides under section XIII:

"(a) Whenever a national bank exercising fiduciary powers becomes insolvent and a receiver is appointed therefor by the Comptroller of the Currency, such receiver will, pursuant to the instructions of the Comptroller of the Currency and to the orders of the court or courts of appropriate jurisdiction, proceed to close such trusts and estates as can be closed promptly and to transfer to substitute fiduciaries all trusts and estates which can not be closed promptly."

We know of no other legislation or regulation with respect to the liquidation of the trust department of a National bank. There is, of course, the Act of June 3, 1864, known as The National Bank Act, R. S. §5234, 12 U. S. C. §192, with reference to the appointment of a receiver, which act provides as follows:

"On becoming satisfied, as specified in sections 131 and 132 of this title, that any association has refused to pay its circulating notes as therein mentioned, and is in default, the Comptroller of the Currency may forthwith appoint a receiver, and require of him such bond and security as he deems proper. Such receiver, under the direction of the comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders. Such receiver shall pay over all money so made to the Treasurer of the United States, subject to the order of the comptroller, and also make report to the comptroller of all his acts and proceedings."

The receiver appointed by the comptroller took possession of the assets of the trust department of The National Bank of Fayette County on October 10, 1931, as

it was his duty to do, which assets included the mortgages mentioned in the bill or petition. At that time interest on the Principini mortgage of $4,500 was in default for about two years and taxes on the mortgaged premises for 1930 and 1931 were unpaid. The record discloses no action by the receiver until December 17, 1935, a period of over four years, at which time he received $20 from the mortgagor. Thereafter he collected the additional sum of $230 from the mortgagor, but took no legal action until June 11, 1938, at which time he entered judgment on the mortgage bond, issued an execution, and sold the property at sheriff's sale. The receiver became the purchaser for the costs of $121.80. He received rental from about October 15, 1938, until the property was conveyed to the trustee in 1939, but the entire amount collected by the receiver, both from the mortgagor and the tenant, except $193.18 remaining in his hands, has been applied to repairs and other costs and expenses. No taxes have been paid and the trust estates participating in the mortgage have received nothing.

When the bank closed, interest on the Griffith mortgage of $14,500 had been paid to September 30, 1931, but taxes for 1930 and 1931 were unpaid. The receiver collected from the mortgagors $435 in 1932 and $25 in 1933, all on account of interest, and distributed the same among the trust estates participating in the mortgage, but took no other action whatever. Taxes on the mortgaged premises accumulated from year to year and remain unpaid.

At the date of insolvency of the bank, interest on the Leonard-Beckett mortgage of $15,000 had been paid to June 30, 1931, and the receiver thereafter collected interest to March 31, 1937, and distributed the same among the participating trust estates. The receiver took no other action with respect to this mortgage. Both mortgagors are now deceased, and the principal complaint is that, although the mortgaged premises

are worth much less than the amount of the indebtedness, the receiver took no action against the estate of either to collect the difference. The estate of Beckett was solvent and was settled in the orphans' court of this county in 1937, wherein the sum of $11,715.97 was awarded to heirs. This sum was more than sufficient to pay the difference between the fair value of the mortgaged premises and the indebtedness. Beckett conveyed his interest in the property to Leonard by deed dated November 15, 1928, but, of course, this did not relieve him of liability. Leonard died in 1937 and the receiver took no action against his estate so as to preserve the lien of this indebtedness against his other real estate.

Exceptant contends that this method of handling these mortgages constituted negligence or a breach of trust on the part of the receiver. Similar exceptions were filed to the accounts of the bank as fiduciary of various trust estates participating in these mortgages, which accounts were stated by the receiver and which came before the orphans' court and the court of common pleas for audit, confirmation, and distribution. Typical of such trusts is the Austin estate as set forth at our fifteenth, twenty-second, and thirty-first findings. By decree of January 7, 1942, the writer of this adjudication imposed surcharges against the bank in connection with each of the three mortgages above mentioned, but imposed no surcharge against the receiver as such. It should be noted that in the adjudication in the Austin estate the surcharge was imposed with respect to the Principini mortgage for the reason that the files of the bank showed that the property was worth $5,000 only on July 30, 1929, thus making the investment 90 percent of the value, and no action was taken to collect the indebtedness. The surcharge was imposed with respect to the Griffith mortgage for the reason that the bank had no appraisal of the property at the time the investment of $14,500 was made, and

the evidence showed that it was of the fair value of $5,500 at insolvency. We held that the investment in the Leonard-Beckett mortgage violated the provisions of the Act of April 26, 1929, P. L. 817, requiring that the investment shall not exceed two thirds of the fair value of the property, and a surcharge was imposed for that reason. All these surcharges constitute common claims against the bank and we are advised that the comptroller has paid the same dividends on them as to depositors and other creditors.

What, then, was the duty of the receiver with respect to these trust assets? We find no authority, and we have been referred to none, dealing with the question of the liability of a receiver of an insolvent National bank for the negligent handling of trust assets. The exceptions appear to assume that the receiver succeeded the bank as fiduciary to liquidate the mortgages for the benefit of the trust estates; however, the question naturally arises as to his power or authority to do so. Courts have dealt with some aspects of these questions in regard to State banks and trust companies with fiduciary powers, but these decisions are not in accord. The weight of authority seems to be that, upon the insolvency of a corporate trustee, its rights, powers, and duties as such trustee do not devolve upon its receiver, in the absence of a statute so providing. In In re Strasser, 220 Iowa 194, 262 N. W. 137 (1935), it was held that under the statutes of that State, upon the insolvency of a trust company and the appointment of the Superintendent of Banking as receiver, the fiduciary positions of the trust company became vacant. The court said: "The receiver cannot act as successor trustee permanently, but must retain and conserve the trust funds until successors in trust are appointed." This case was approved and followed in Carson's Estate, 221 Iowa 367, 265 N. W. 648 (1936). In City Bank & Trust Co. v. Mitchell, 178 Ga. 457, 173 S. E. 134 (1934), the owner of property executed a deed of

trust to secure bonds and named a State bank as trustee. It was held that when the bank became insolvent and the Superintendent of Banks took possession he did not thereby succeed the bank as trustee for the purposes set forth in the deed of trust. To the same effect are Young v. Bankers' Trust Company's Receiver, 250 Ky. 1, 61 S. W. (2d) 904 (1933), and State v. Cantley, 330 Mo. 943, 52 S. W. (2d) 397 (1932). Under the banking laws of the State of Wisconsin, the Commissioner of Banking, upon taking possession of an insolvent trust company, does not succeed the trust company as trustee in the execution of trusts: Sullivan v. Kuolt, 156 Wis. 72, 145 N. W. 210 (1914).

But under a statute following closely the language of the National Bank Act with respect to the appointment of a receiver by the Comptroller of the Currency, the Supreme Court of Florida, in Power v. Amos, 94 Fla. 411, 114 So. 364 (1927), holds, page 416, that "the receiver is charged with handling such trust matters in the same manner in which the original trustee was charged with handling such matters until such time as a substitute trustee may be duly appointed by a court of chancery having jurisdiction of the matter."

Prior to 1933 there existed in our State a difference of opinion and consequent confusion regarding the many practical questions in dealing with trust assets of insolvent banks and trust companies. The Banking Code of May 15, 1933, P. L. 624, made no specific provision as to the rights and powers of the Secretary of Banking with respect to trust estates, but the Department of Banking Code of May 15, 1933, P. L. 565, sec. 802, provides, in part, as follows:

"The secretary, when in possession of an institution as receiver, shall have all the rights, powers, and duties which such institution had in its fiduciary capacity. He shall have title to all the assets, including debts due, liens and other security therefor, and all rights of action or redemption, of all estates of which the in-

stitution, either alone or jointly with someone else, was trustee, executor, administrator, guardian, assignee, or other similar fiduciary, and shall have the power to administer such estates. In pursuance of this power, the secretary may institute any action at law or in equity, or execute and sign any written instruments, which the institution itself could have instituted, executed, or signed.

"The secretary shall not, however, have the power to invest funds or property of any such estate, except where it shall appear necessary to purchase any real or personal property or any interest therein, in order to protect an equity which such estate has in such property."

But State laws do not govern in the liquidation of National banks. The secretary or commissioner of banking in charge of an insolvent State bank is under the jurisdiction of State courts and is liable to account in those courts. Under the Federal system, the receiver of a National bank is not an officer of any court and is not required to submit an account of his administration of the bank's affairs in any court. He is an administrative agent appointed by the comptroller, and like the comptroller himself, is an officer of the United States: Price, Receiver, v. Abbott, 17 Fed. 506; In re Chetwood, 165 U. S. 443, 458; Port Newark National Bank of Newark v. Waldron, 46 F.(2d) 296, 298; United States v. Weitzel, 246 U. S. 533, 541; Granzow v. Village of Lyons, Ill., 89 F.(2d) 83, 85; La Parr et al. v. City of Rockford, Ill., 100 F.(2d) 564, 567. The basic authority of the receiver with respect to trust estates is, therefore, the regulation of the Federal Reserve Board providing that "such receiver will, pursuant to the instructions of the Comptroller of the Currency and to the orders of the court or courts of appropriate jurisdiction, proceed to close such trusts and estates as can be closed promptly and to transfer to substitute fiduciaries all trusts and estates which cannot be closed promptly."

We hold that whenever a National bank exercising fiduciary powers becomes insolvent, and a receiver is appointed therefor by the Comptroller of the Currency, such receiver does not succeed to the rights, powers, and duties of said bank as fiduciary, that the fiduciary positions become vacant, and that upon application to courts of appropriate jurisdiction substitute fiduciaries may be appointed. We further hold that whenever a National bank exercising fiduciary powers becomes insolvent and a receiver is appointed therefor by the Comptroller of the Currency it is the duty of such receiver to take possession of all trust assets and conserve them until they are paid, assigned, transferred, and delivered to beneficiaries or to substitute fiduciaries, and that in so doing the receiver has implied power and authority to collect the principal and interest on investments, collect rentals of real estate, and make necessary repairs, foreclose mortgages, and perform any and all other acts which he may deem to be for the best interests of the trust estates, but that he is under no obligation to do any of these things. We further hold that the receiver of an insolvent National bank with fiduciary powers is not liable for losses with respect to his possession and administration of trust assets, except for fraud.

There is nothing in the record to indicate any fraudulent acts on the part of the receiver with respect to any of these mortgages. It is true that no legal action was taken on the Principini mortgage until almost seven years after the insolvency of the bank and that no legal action was taken at all on the other two mortgages, but, as we have stated, the receiver was under no obligation to do so. The law does not contemplate that the receiver shall liquidate the trust assets. The trust estates are to be closed or turned over to substitute fiduciaries. Where the beneficiaries are sui juris, such trusts may be closed, otherwise substitute fiduciaries are required.

It is primarily the duty of the beneficiaries of the trusts and not of the receiver to procure appointment of substitute fiduciaries, and the beneficiaries participating in these mortgages could have acted promptly. If they had done so and the assets had been transferred, the duty to foreclose the mortgages, if any existed, would have then devolved upon such substitute fiduciaries. It must be assumed that under economic conditions existing at that time, or for some other sufficient reason, the beneficiaries deemed it inadvisable to act.

It is apparent that if the receiver in office in 1937 had presented a claim against the Beckett estate he could have recovered the difference between the indebtedness as evidenced by the mortgage bond and the fair market value of the mortgaged premises. But so far as the record shows the receiver had no actual notice of the proceedings in this estate. He had no knowledge at that time of the value of the mortgaged property or that it was insufficient to pay the mortgage debt. No beneficiary had investigated the matter at that time and requested the receiver to make any such claim in his behalf. The receiver is not required to make an investigation of all of these matters under penalty of liability against him personally for losses sustained. His duty is to receive, protect, and preserve the trust assets as they are until they can be turned over to beneficiaries or to substitute fiduciaries. These conclusions also apply with equal force to the alleged liability of the receiver for failure to institute suit against the estate of McClellan Leonard who died on June 7, 1937.

As we have seen, the National Bank Act provides that the receiver shall take possession of all assets, collect all debts, and upon order of court may sell or compound all bad or doubtful debts and sell all real and personal property. These are his duties with respect to the commercial assets of the bank, and he is liable only in the event of fraud in the administration

of those duties: Kendall v. Stokes et al., 3 How. 87, 44 U. S. 87; Mellon v. Brewer, 18 F. (2d) 168; Cooper v. O'Connor et al., 99 F. (2d) 135; Love v. Allard, 286 S. W. 581; Cooper v. O'Connor et al., 105 F. (2d) 761. If we keep in mind that the receiver of a National bank is an officer of the United States, and in that respect similar to the Secretary of the Treasury, Comptroller of the Currency, and other officers, even if not of equal rank, the application of the above authorities will be readily seen. The receiver owes no higher degree of duty to the trust assets than to the commercial assets.

There is a further matter which requires consideration. The Comptroller of the Currency, contending that certain losses aggregating $19,039.24 had been sustained by reason of the improper administration of a former receiver, presented a claim for that amount to the surety on his bond. One of the items included in the claim is designated as "Estimated loss for failure to file claim v. decedent's estate, $5,000.00." The claim was compromised on the payment by the surety to the present receiver of the sum of $9,000, the compromise settlement having been approved by the District Court of the United States on June 18, 1942. It is admitted that the above item of $5,000 has reference to the failure to file a claim on the mortgage bond against the estate of Alonzo Beckett, deceased. The proportionate share of the compromise settlement allocated to this item is $2,363.54.

We are of the opinion that this fund should be accounted for and applied in exactly the same manner as if the former receiver had collected that amount from Alonzo Beckett or from his estate. It will be conceded that if the personal representative of Beckett's estate had made a payment on account of the indebtedness it would be the duty of the receiver to account for it, even though the mortgage had passed from his hands. He would have no right to credit the payment

to other trust estates, or to transfer the fund from the trust assets to the commercial assets of the bank. The fact that the funds were received not from the Beckett estate, but from the surety on the bond of the receiver, who, it is alleged, should have received them from the Beckett estate, does not change their character. They remain impressed with the same trust.

We are not here concerned with the question of the legal liability of the surety on the bond of the former receiver, or as to why the claim was made for $5,000 only and the compromise for less than 50 percent. We are concerned only with the fact that the present receiver did actually collect the sum of $2,363.54 under the circumstances mentioned, and that the fund is now in his possession. The trustee contends that he is entitled to this fund to apply on account of the indebtedness secured by the Leonard-Beckett mortgage. The receiver contends that he is entitled to retain this fund and transfer it to the commercial department in order to reimburse the bank by reason of surcharges imposed with respect to this mortgage. It will be recalled that surcharges were imposed on the basis of a loss of $7,700 on the whole mortgage. But the surcharges against the bank were not imposed by reason of negligence on the part of the former receiver. As we have seen, none could be so imposed. They were imposed by reason of a breach of trust by the bank, and the liability of the bank became complete at insolvency. The beneficiaries of this mortgage are entitled to nothing more than to be made whole, but it is unlikely that the surcharges will be paid in full. When this fund, together with dividends on the surcharges are sufficient to pay the mortgage indebtedness in full, of course no further dividends should be paid.

### Conclusions of law

First.—The sum of $2,363.54 collected by the present receiver of The National Bank of Fayette County on

June 18, 1942, from the surety on the bond of the former receiver should apply on account of the indebtedness secured by the Leonard-Beckett mortgage, and the trustee appointed to liquidate said mortgage is entitled to said sum. To this extent exception no. 2 is sustained.

Second.—Neither the bank nor any of its receivers is liable to the trustee in any other sum or sums whatsoever with respect to the three mortgages here involved, and all other exceptions should be dismissed.

## Decree

And now, January 27, 1943, the accounts of the receiver of The National Bank of Fayette County with respect to the mortgages hereinafter mentioned having been examined and audited by the court, upon consideration thereof, it is ordered and decreed that the accounts with respect to the mortgages of Ettore Principini and D. A. Griffith et al. be confirmed, and that the account with respect to the mortgage of McClellan Leonard and Alonzo Beckett be amended and supplemented by charging the receiver with the additional sum of $2,363.54 and that as amended and supplemented the said account also be confirmed, that all exceptions inconsistent with the foregoing opinion be dismissed, and that the balance in the hands of the receiver be paid in accordance with the schedule of distribution hereinafter set forth, unless exceptions are filed within 15 days.

It is further ordered and decreed that the matter with respect to the Leonard-Beckett mortgage shall be brought to the attention of the Comptroller of the Currency, and leave is hereby granted to the trustee to apply, if necessary, by proceedings in the Federal court to collect the award with reference to said mortgage.